282 So.2d 70

**James Sanford BURNETTE**

v.

**STATE.**

**7 Div. 210.**

Court of Criminal Appeals of Alabama.

Aug. 14, 1973.

Love, Love & Caldwell, Talladega, for appellant.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

CATES, Presiding Judge.

Obtaining money, some $5,000, by a false pretense: sentence, ten years.

A confederate of Burnette's, according to the tendencies of the State's evidence, baited a trap in East Tennessee. The bait was the chance to buy some thirty-nine color television receivers, console models, for $140 each.

This con man explained to his dupes that the sets had gotten into a warehouse to be sold under court order. Somehow the merchandise had been infected because of a truck driver's derelictions. The purchase price had to be cash because there was a "split" somewhere along the line.

Burnette appears briefly in the scenario. When the victims appear in Talladega, the confederate introduced Burnette as "Deputy Chief Steve Jackson." Jackson—or Burnette—did not demur to or gainsay this introduction with its appellation of mystery. This was outside the court house.

Burnette went with the Tennesseans to their truck and got in the cab with the holder of the money. Burnette had a blue backed document purporting to be a court order on which he pretended to check off television serial numbers. He explained that the sets were in a warehouse about a half a mile from the court square. The Tennesseans were told by Burnette to go there and that Burnette, afer going by the judge's office for the necessary signatures and payment into court, would join the company at the reputed depository. He was paid.

Jackson and friend went back to the court house. The State produced the local probation officer who said he saw Jackson and another man enter the south door of the courthouse, walk through the corridor, and go out by the north portal. From there the two walked to a Mustang bearing Tennessee tags, got in and drove off.

Meanwhile, out at the warehouse, the bargain hunters found emptiness. They returned to the courthouse and set the machinery of the law in motion.

I

First, appellant argues that the State should have proved that the Sheriff of Talladega County did not have a Chief Deputy by the name of Steve Jackson.

When Burnette pled not guilty without a plea of misnomer he admitted thereby that the name by which he was called in the indictment was his true name. Verberg v. State, 137 Ala. 73, 34 So. 848; Bryant v. State, 28 Ala.App. 363, 184 So. 288; Ward v. State, 242 Ala. 307, 6 So.2d 394.

When, under the State's proof, Burnette allowed himself to be introduced as Steve Jackson, Deputy Chief Sheriff, by the doctrine of tacit admission he affirmed the introduction just as much as if he had said, "Howdy, pardner, I'm Steve Jackson, Deputy Chief Sheriff." The victims relied on this to a $5,000 detriment to say nothing of their chagrin.

The burden was not on the State to prove there was no Deputy Sheriff named Steve Jackson, rather only to prove that Burnette pawned himself off as Jackson, a deputy. See Harvey v. State, 41 Ala.App. 300, 130 So.2d 823.

Part of the issue was confessed by Burnette's plea of not guilty. The instant indictment was based on Code 1940, T. 14, § 209, obtaining by false pretense not on § 214, by false personation.

## II

■ The second point argued to reverse is that the State failed to aver and prove which warehouse Burnette pretended was the depository of the sets.

No demurrer was filed to the indictment. The averment of the televisions being in a warehouse in Talladega was unchallenged as to legal form.

Regarding the proof as to which warehouse, we consider that it was a jury question as to whether or not the warehouse was the one indicated to the victims. We excerpt from the testimony of State's witness Clowers:

"Q. What did he do with that money when you gave it to him?

"A. He put it in this blue document he had and folded it back up and put it on his inside lapel?

"Q. Then did he give you or anyone in your presence any instructions or tell you where he was going?

"A. Yes, he was going back to the courthouse to get the judge to sign this document. To release the television sets.

"Q. Alright. Of course, this was on the 12th day of May, 1971?

"A. Yes.

"Q. He said he was going back to get the judge to sign the document to release the television sets—did he at that time indicate to you where these television sets were being kept and stored?

"A. Yes, he said they were in a warehouse right down the street here.

"Q. Did he indicate the direction of the warehouse?

"A. He told me to go down this street and cross the railroad and it would be on the left.

"Q. Alright, sir. Do you recall anything else taking place after he gave you instructions how to find the warehouse?

"A. He was to come back up to the courthouse to get some trustees [sic, "trusties"?] to go down and help load the televisions."

## III

■ When Clowers paid over $5,160 to Burnette—as the indictment asseverated—Burnette handed him back $100 with the request to give it to one of the jail trusties, "a big tall boy." Appellant argues that this made a substantial and fatal variance from the alleged amount in that thus, Burnette—under the State's own proof—only received $5,060.

The argument pursues the familiar maxim of harmony between allegata et probata. We refrain, however, from going any further into this thesis lest we be accused of tormenting the appellant by way of denying him a right because he is now without a remedy. The cruelty of such all too frequent judicial writing brings to mind the lament of MacBeth when he said:

"An be these juggling fiends no more believ'd.

That palter with us in a double sense;

That keep the word of promise to our ear.

And break it to our hope!"

In Hope v. State, 5 Ala.App. 123, 59 So. 326, Walker, P. J., wrote:

"The court did not err in overruling the motion of the defendant to exclude the evidence offered by the state. The ground of the motion was that the charge in the indictment that the defendant obtained $100 from the person to whom the false pretense was alleged to have been made could not be sustained by evidence tending to show that he so obtained only $32.50. The statement in the indictment of the amount of money obtained was not descriptive of an essential ingredient of the offense charged. The charge made could be sustained by evidence of the obtaining, in the manner

**634**

alleged, of a less amount of money than that averred. Davis v. State, [3 Ala.App. 71] 57 South. 493; Martin v. State, 125 Ala. 64, 28 South. 92."

See also Cheshire v. State, 10 Ala.App. 139, 64 So. 544; Foote v. State, 16 Ala.App. 136, 75 So. 728; and Holloway v. State, 37 Ala. App. 96, 64 So.2d 115.

The amount of money or value of property taken in this offense is important in identifying the transaction and also in determining whether the punishment on conviction is to be treated as for grand or petty larceny. See Code 1940, T. 14, § 209. But plus or minus figures otherwise go only to credibility of the testimony.

IV

■ Burnette's confederate rode with the victims on their set up journey from East Tennessee to Talladega. One of them, State's witness Burns, was allowed, over objection, to testify as to a conversation with the accomplice Richards, which took place in the absence of the defendant.

We find it to strain credulity that when the State showed that Richards introduced Burnette as Jackson that the jury could not view the operation as anything other than the product of a conspiracy of prior arrangement. We quote from the record:

"Q. After you got in the automobile and from the time you left the furniture store there in Knoxville until the time you go into Chattanooga was there conversation between Mr. Richards, Mr. Clowers and yourself?

"A. Yes, sir.

"Q. Alright. Would you tell the jury in substance what was said by you, Mr. Clowers, and Mr. Paul Richards?

"Mr. Love: We object on the following separate and several grounds: It's highly irrelevant, incompetent and it's hearsay.

The Court: Overrule.

Mr. Love: And we except.

"A. We was told when we left Knoxville by Paul Richards that we was coming to Talladega.

"Q. That's the first time you knew that you all were coming to Talladega. Is that correct?

"A. Yes, sir. It was.

"Q. What else did he say if anything?

"A. That the T. V.'s were located in Talladega and that the Chief Deputy and Sheriff and the Judge were the ones making the sell.

"Q. Chief Deputy, the Sheriff, and the Judge?

"A. Right.

"Q. Did he say anything else concerning the Chief Deputy if you recall at that time and place in the automobile from Knoxville to Chattanooga?

"A. He called him by name. Called him Steve Jackson."

In Muller v. State, 44 Ala.App. 637, 218 So.2d 698 we find:

"The record reveals that evidence was presented from which the jury might reasonably infer the existence of a conspiracy. Therefore, the declaration and conduct of the conspirator in furtherance of the common purpose were admissible against the co-conspirator. Thomas v. State, 133 Ala. 139, 32 So. 250."

Perhaps it would have been a more cautious ruling by the court to have overruled the objection subject to the State's connecting up the conversation through later proof. However, since the State's evidence, if credited to the required degree, tended to show a conspiracy, the error, if any, was harmless. Supreme Court Rule 45.

We have reviewed the entire record under the requisites of Code 1940, T. 15, § 389 and consider that the judgment below is due to be

Affirmed.

All the Judges concur.