HARRIS, Judge.
Appellant was convicted of the offense of obtaining property by false pretense and the Court sentenced him to five years imprisonment in the penitentiary. Throughout the trial proceedings appellant was rep-resénted by court-appointed counsel and at arraignment he pleaded not guilty. After sentence was imposed appellant gave notice of appeal and was furnished a free transcript. Trial counsel was appointed to represent appellant on appeal.
Omitting the formal parts the indictment reads as follows:
“The grand jury of said county charge that, before the finding of this indictment, GEORGE GRIFFIN, alias GEORGE SAM GRIFFIN, alias GEORGE STERLING GRIFFIN whose name is to the Grand Jury otherwise unknown, did falsely pretend to Dr. John Sims with intent to defraud that the property located at Lot 15 in Block 5, according to survey of Redstone Land and Development Company’s 4th Section as recorded in Map Book 83, Page 33 in Probate Office of Jefferson County was free and clear of all encumbrances, and by means of such false pretense, obtained from the said Dr. John Sims one check the face value of Eight Thousand Five Hundred and Thirteen Dollars and one check, the face value of Thirty Seven Thousand Dollars, the personal property of Dr. John Sims, against the peace and dignity of the State of Alabama.”
The facts in this case are complex and confusing due, in large measure, to factors that tended to obscure the real issues. Added to this was the fact that appellant was allowed to partially conduct his own defense and to cross-examine the victim on a maze of legal documents which he claimed were relevant to the issues involved. No doubt this was designedly done to divert the minds of the jury from the charge laid in the indictment.
The victim, Dr. John Sims, was a disabled dentist who owned and lived in a house located on 5.5 acres of land in Jefferson County, Alabama. In November of 1970, appellant negotiated with Dr. Sims an option contract to purchase the land on which Dr. Sims lived.
Subsequently, Dr. Sims entered into an agreement to sell and convey these premises to Fin-Dev, Incorporated, of which corporation appellant was the President. The purchase price of the Sims property was one hundred and fifty thousand ($150,-000.00) dollars. The price was to be paid in four installments — the first three in the amount of $43,500, and the final payment was to be in the amount of $19,500. Each *845 installment was due annually on August 1, beginning in 1971.
Because of the pending sale of his home and acreage Dr. Sims needed another home in which to live. Appellant agreed to build Dr. Sims a new house at a cost of $45,-530.00. Dr. Sims and appellant agreed that the new house would substitute for one of the installments due on the Sims property.
On January 25, 1971, Dr. Sims entered into a contract with Residential Planners, Inc., for the purchase of a house and lot. The agreement was made with appellant who was the President of Residential Planners, Inc. This contract was contingent upon the closing of the sale of the Sims property as agreed in the Fin-Dev, Inc. agreement. In pertinent part, the Residential Planners’ agreement reads as follows:
“The Seller agrees to convey said property to the purchaser by Regular Warranty deed free of all encumbrances, except as hereinabove set out and Seller agrees that any encumbrances not herein excepted will be cleared at the time of closing.”
No liens or encumbrances were set out on the face of this agreement.
For reasons unknown the Fin-Dev, Inc. contract was never consummated. However, appellant began construction of a home for Dr. Sims in April of 1971. In August of 1971 Dr. Sims moved into his new residence. Appellant made the first installment payment of $43,500. Dr. Sims gave appellant a check for $8,530.00 as part payment on the new house.
When the sale of the Sims property was finally made, it was through yet another agreement. This contract was entered into by and between Dr. Sims and Sterling Man- or, Ltd., of which the appellant was a general partner, and Residential Planners, Inc., of which appellant was President as aforesaid. This “tri-party” agreement did not mention that appellant was to build Dr. Sims a new home. The original terms for the payment of the Sims property remained the same.
At the time appellant received the $8,530.00 check from Dr. Sims the Sims property was encumbered as shown by the testimony of appellant on cross-examination:
“Q. When the house was completed, at that time there was no mortgage of any kind on it, was there?
“A. Yes there was.
“Q. What kind of mortgage was on the house?
“A. A construction loan.”
The evidence revealed that this construction loan was obtained from Exchange Security Bank through a commitment letter from Charter Mortgage Company. This commitment letter from Charter Mortgage Company expired and appellant obtained another commitment letter from Guaranty Savings in October of 1971. In March of 1972 appellant closed the construction loan and obtained a permanent mortgage on the property previously sold to Dr. Sims, all without the knowledge of Dr. Sims. The mortgage was to Guaranty Savings.
In 1972 appellant did not make the payment due on the Sims property until September of that year. At that time appellant gave Dr. Sims two checks, one for $37,000.00 and the other one for $6,500.00. Both checks were drawn on Sterling Manor, Ltd., and signed by appellant. Dr. Sims still owed $37,000.00 on the house appellant had constructed for him and appellant requested Dr. Sims to endorse this check back to him and Dr. Sims complied with this request.
On this same occasion appellant delivered to Dr. Sims a warranty deed to the house and lot appellant sold to Dr. Sims. This deed reads in part: “. . . that it is lawfully seized in fee simple of said premises, that they are free from all encumbrances, that it has a good right to sell and convey the same as foresaid.” Dr. Sims testified that when appellant gave him the deed, appellant “. . . read off the part of it stating that the property was clear.” At this time Dr. Sims requested a policy of title insurance on the property and appellant stated that he would have it in a few days. Several months later appellant delivered to Dr. Sims a document which he pur *846 ported to be a title insurance policy. Dr. Sims later determined that the document represented by appellant to be a title insurance policy was not, in fact, a title insurance policy.
Dr. Sims subsequently discovered that a permanent mortgage had been placed on the house and lot in which he lived. This discovery came about in January of 1973 by virtue of a telephone conversation with a Mr. Foushee, an employee of Guaranty Savings and Loan. Mr. Foushee testified that Guaranty Savings and Loan had conducted a foreclosure inspection when the mortgage payments became five months in arrears. To avoid foreclosure on the mortgage on his home Dr. Sims paid all amounts then past due, and at the time of the trial of this case Dr. Sims was still making monthly payments to Guaranty Savings on said mortgage. '
Upon discovery of the mortgage Dr. Sims contacted the appellant and appellant told him that the mortgage was the result of a mix-up which appellant would take care of. Appellant failed to straighten out the so called “mix-up”, but gave Dr. Sims an undated check in the amount of $38,000.00 to cover the mortgage. Appellant told Dr. Sims that this check was no good, that he didn’t have the money, and that the check should only be cashed in the event something happened to him or he “went under”. That appellant “went under” cannot be disputed. He testified:
“I was involved in six different projects. There was a reversal in the economy and I had closed another three-quarter million dollar construction loan in myself and my wife’s name, Griffin Investments, another corporation, set up to do one specific job, building another apartment complex, and as a result of the reversal in the living economy, my financial situation changed and all of a sudden ... I was broke.”
Appellant further testified that he had made all mortgage payments as they became due until he was broke. Appellant sold his interest in the Sims property and the apartment complex on that property to one John O. Freeman. Dr. Sims subsequently received the remaining payments on his property from Mr. Freeman.
In January of 1975, Dr. Sims swore out a warrant against the appellant and the prosecution of this case commenced. When the case came to trial, counsel for appellant filed a motion to dismiss the indictment on the ground that the prosecution was not timely made. The trial court denied this motion. Counsel for appellant also renewed this ground for dismissal in the form of a request for a directed verdict, which request was also denied by the trial court, stating:
“. . . I think that any kind of a fraud type thing, as in civil cases, the statute of limitations must operate from the discovery. . . . For instance, in this case, I think if a person goes out, . a person could go out and purport a house to be free and clear and sell it to someone and put a mortgage on it, a thirty year mortgage, and then pay it off in three years with the idea that after three years not paying any more. No one would ever discover that fraud until after three years and the person quit, and then to say that that could not be prosecuted because three years had elapsed, to me would be an absurdity.”
Counsel for appellant further contended that there was a material variance in the indictment, stating that, in addition to the check in the amount of $8,530 given by Dr. Sims to appellant being outside of the three year statute of limitations; it was not obtained as a result of the alleged pretense that the property sold to Dr. Sims by appellant was not encumbered. This ground for directed verdict was also rejected by the trial court.
The offense of false pretense consists of: (1) the pretense; (2) its falsity; (3) obtaining property by reason of the pretense; (4) knowledge on the part of the accused of the falsity of the pretense; and (5) intent to defraud. Mitchell v. State, 56 Ala.App. 718, 325 So.2d 509; Spivey v. State, 55 Ala.App. 687, 318 So.2d 382.
In Stone v. State, 55 Ala.App. 663, 318 So.2d 359, 363, this Court said:
*847 “To constitute the offense of false pretense, it is enough if a material part of the pretense is false; that it be made with the intent to defraud, and that it induces the person sought to be wronged to part with his property, and there are proper inquiries for the jury under appropriate instructions from the Court. Wilkerson v. State, 140 Ala. 155, 36 So. 1004.”
In the case of Young v. State, 155 Ala. 145, 46 So. 580, 581, the Supreme Court made this observation:
“And if a person should fraudulently represent a fact to be true, knowing at the time that it is not true, and resorts to the fraudulent representation to obtain money from another, and does so obtain it, he would be guilty of ‘defrauding’ another by ‘deceitful means’, and we do not doubt he would be guilty of obtaining the money under false pretenses.”
It is sufficient to prove so much of an indictment as shows that the defendant has committed a substantial offense specified therein. Fuller v. State, 39 Ala.App. 219, 96 So.2d 829; Parks v. State, 46 Ala. App. 722, 248 So.2d 761; Owens v. State, 291 Ala. 107, 278 So.2d 693.
Appellant contends there was a fatal variance in the indictment and the proof adduced in support thereof and further that the first check of $8,530 given by Dr. Sims to appellant was barred by the statute of limitations. We do not agree with either contention.
It is clear from the evidence that appellant contracted with Dr. Sims on January 25, 1971, to construct a house for him free of all encumbrances. It is also clear by appellant’s own admission that the property was encumbered when he received the first payment of $8,530.00 in August of 1971. This encumbrance still existed in September of 1972 when appellant delivered to Dr. Sims a warranty deed and read to him from that deed that the property was unencumbered. The only logical conclusion that can be drawn from these facts is that appellant obtained two checks from Dr. Sims on two occasions by means of one false pretense. This was part and parcel of one continuous transaction or occurrence.
In Beasley v. State, 59 Ala. 20, the Supreme Court held that goods obtained from one person on two different occasions by the same pretense constitutes only one transaction.
The allegation in the indictment of the amount of money obtained by false pretense is not descriptive of the essential ingredient of the offense charged. The charge can be sustained by proof of obtaining a less amount of money than that averred, and in the manner alleged. Foote v. State, 16 Ala.App. 136, 75 So. 728; Burnette v. State, 50 Ala.App. 630, 282 So.2d 70.
In Woods v. State, 133 Ala. 162, 31 So. 984, the Supreme Court held where an indictment for false representations alleged that the- defendant falsely stated, as a basis for credit, that he had an unencumbered horse and buggy, the fact that the proof showed that the horse, only, was encumbered, was not a fatal variance.
We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none.
The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.