326 So.2d 680

**Bruce L. SMITH, alias**

v.

**STATE.**

**3 Div. 383.**

Court of Criminal Appeals of Alabama.

Dec. 9, 1975.

Rehearing Denied Jan. 20, 1976.

James W. Garrett, Jr., Montgomery, for appellant.

William J. Baxley, Atty. Gen., and C. Lawson Little, Asst. Atty. Gen., for the State, appellee.

DeCARLO, Judge.

Robbery; ten years.

The indictment in this case charged:

". . . . Bruce L. Smith, alias . . . . feloniously took $5.00 in lawful currency . . ., the property of Arlin Smith, from his person, and against his will, by violence to his person, or by putting him in such fear as unwillingly to part with the same . . ."

In support of this charge the State presented the following testimony.

On April 27, 1974, Arlin Smith's car stalled near the interstate in Mongomery, Alabama. After leaving his car, Smith walked to nearby Court Street where a car, occupied by three males, pulled into a driveway in front of him. One of the trio asked him for a cigarette. When he went over to the car the following occurred:

.    .    .    .    .    .

". . . One asked me for a dollar in my pocket, and I told him I didn't have one, and then he said, 'give me a dollar in your pocket'. And I said, 'Well, I don't have one.' And the guy sitting on this side of the car, the passenger, said, 'Let me see your billfold.' And I didn't say anything. And the driver stuck the gun up and said, 'The man wants to see your billfold'. So I pulled my billfold out of my pocket and said I didn't have but five dollars, so they took my billfold and took the five dollars and gave me my billfold back. And the guy said he

was going to find a store or something, so they left."

Arlin Smith stated that the billfold was turned over to the appellant.

Detective Kenneth A. Hitson of the Montgomery Police Department received the robbery complaint on the afternoon of the incident. He testified that Smith related what had occurred and gave him the license number of the car. A line-up was conducted on the following Sunday and Smith identified the appellant.

At the conclusion of the State's case the appellant's motion to exclude was over-ruled and the following testimony was offered.

George Davis, a codefendant, testified that he met the appellant only minutes before the alleged robbery. He had been asked by George Douglas to drive the car to appellant's house. When they arrived, Bruce Smith got into the car and Davis continued to drive. Douglas was sitting on the back seat and appellant sat next to Davis in the front seat. While driving on Court Street, Davis saw Arlin Smith and remarked he knew him. One of the others called to Smith and when he came over to the car Douglas asked for the loan. Davis gave this account of what followed:

"After that, he [Arlin Smith] said, 'Man I ain't got none. I ain't got no money.' So they kept talking, and then he said, 'I got one five dollars.' And Bruce told him he had change, and he handed it to him; and then he said he didn't have change. So then we backed out and was fixing to go. We went up on Marshall Street—."
(Bracketed material added).

Davis denied the three had any agreement to rob and stated he did not point a gun at Arlin Smith.

In a statement made to the police, Davis admitted showing the gun to "the boy,"

Arlin Smith. He stated the reason "the boy" gave Bruce the money was, "I reckon he was scared. He said he could have the five dollars, 'just let me go home.'"

The appellant testified that just before they encountered Smith, Davis remarked he knew him and Douglas who was sitting on the back seat called to Arlin Smith:

". . . George Douglas, . . . said, 'Hey, man, loan me a dollar.' So he said, 'I don't have no money,' just like that. So he said, 'Loan me a dollar, man.' He said, 'I don't have no money.' So he said, 'Man, loan me a dollar.' So he said, 'Well, man, all I got is five dollars,' just like that. 'All I got is five dollars,' and he did his hands something similar to this (indicating).

"So he went in his pocket and pulled his wallet out; and when he pulled his wallet out, he opened his wallet up, and his wallet had a little money compartment with a bill compartment. He opened it up just like that and said, 'All I've got is five dollars,' just like that. So, I said, 'Look here, man, I might have some change.' So I run my hand in my pocket, and I went through my bills, and I didn't have but three one dollar bills, you know. I had about ten twenties but I didn't have but three one dollar bills. I said, 'Man, I don't have no change.' I said, 'I'm going to go to the store and get some change,' just like that.

"So he handed the five dollar bill in the car. He handed it to me in the car; and by me sitting on the side that he was, I took the five dollar bill. I accepted the five dollar bill from him. I said, 'We'll go get some change,' so we left . . .'"

Appellant stated he did not threaten Arlin Smith and denied seeing the gun on this occasion. He admitted seeing it later.

**I**

Under T. 15, § 389, Code of Alabama 1940, Recompiled 1958, this court is re-

quired to examine all rulings adverse to appellant's cause and in deference to that duty we reviewed the following.

During Arlin Smith's testimony, he began to recount what occurred after the trio drove away and subsequently returned. Appellant objected, arguing what occurred after the original encounter was not part of the res gestae. In a hearing out of the jury's presence, the court concluded it was. Smith then testified that when the car returned, appellant approached him and this occurred:

> "So he came back to the corner, and he told me—something about first he couldn't find a store, and then he told me to come over to the car, and I told him I had to go home. He said something. I can't remember what he said, but that's when he grabbed me by the arm and told me to come over to the car; so we go down, and he pulled my hair and pulled my head into the car and rolled the window up on my neck."

Later Ted Wiggins was allowed to testify over appellant's objection to the following facts relating to the same incident.

At about 3:30 P. M. on the day in question, Wiggins saw a car occupied by three males stop on Marshall Street. One of the occupants got out of the car and walked over to Arlin Smith. Some words were exchanged and Smith followed the man over to the car. The man got back into the car on the passenger side next to the driver. At that time, Smith bent over near the car window and the man grabbed Smith's hair. He pulled his head into the window and rolled the window up on Smith's neck.

Wiggins stated he saw the driver point a gun at Smith and the man on the back seat deliver a blow to Smith's head. At the time, Wiggins was standing in his yard and yelled at the group several times. Smith was then released and the trio drove away.

Time is not the only criterion for determining whether a thing said or done is a part of a given transaction. If the act done, or statement made leads up to, or is the result of the main fact, or tends to shed light upon, or gives character to the occurrence constituting the gist of the inquiry; then it is admissible as part of the res gestae. *Dillard v. State,* 27 Ala.App. 50, 165 So. 783.

In the present case the acts occurring after the main fact were not disjoined by a great span of time. The evidence indicated that the trio could not have driven more than a block before they returned to the scene. Under this circumstance, we believe the acts done and statements made afterwards were not only connected by the time factor, but were the result of the main fact. This evidence shed light upon, and gave character to thing done. It was part of the res gestae.

## II

The appellant testified in his own behalf and described the circumstances surrounding his involvement in the alleged robbery. He explained they approached Arlin Smith only because George Douglas wanted to borrow a dollar from him.

When the State's cross-examination was concluded, the court proceeded to question the appellant. After the court's examination, defense counsel approached the bench. He requested a mistrial be declared, alleging through its questioning the court had illustrated the incongruity of appellant's story. Counsel averred the questioning intimated an unlikelihood a loan would be sought from a little known person when appellant possessed a large sum containing dollar bills.

It was asserted that during this questioning the court demonstrated in its tone of voice and facial expressions a disbelief in appellant's answers. Counsel complained this had a prejudicial effect on the jury.

In responding to appellant's motion, the court remarked:

. . . . . .

"THE COURT: Well, the Court felt it was its duty in the interest of justice to ask certain questions of the defendant so the jury would not be confused about it, because it was in the interest of justice that the Court asked certain questions that have not been asked by the lawyers. So far as the Court's attitude and being disgusted, the Court, I might say, has been rather—I wouldn't use the word 'disgusted' throughout the whole trial, because—and I have been looking at the ceiling several times, not because of what the defendant is saying, but because of what the lawyers are saying."

The motion·was overruled and the jury was recalled.

Appellant now contends it was error to refuse the motion for a mistrial. Counsel argues this behavior by the court constituted an expression of opinion on appellant's credibility as a witness.

In determining the foregoing question we reviewed the record and found that the judge in his preliminary remarks cautioned the jury what he said during the upcoming trial was not to be taken as evidence. Also in the court's oral charge the judge again admonished the jury on the same point in this language:

". . . The evidence you get is what comes from here and not from anybody else, including me; so you can't take anything I say or anything either one of the counsels says as evidence. The evidence has to come from the witness stand and from no other place, and that's what you have to use in determining what the truth is in this particular case."

It is difficult for us to evaluate from this cold record what impressions were given by the court's tone of voice and facial expressions. In this regard we note a similar issue was discussed in *Allen v. State*, 290 Ala. 339, 276 So.2d 583. There the Alabama Supreme Court acknowledged:

"The trial judge is a human being, not an automaton or a robot. He is not required to be a Great Stone Face which shows no reaction to anything that happens in his courtroom. Testimony that is amusing may draw a smile or a laugh, shocking or distasteful evidence may cause a frown or scowl, without reversible error being committed . . ."

■ Unquestionably a trial judge has the right to question a witness about various aspects of a case. The exercise of this prerogative does not transcend his authority or invade the rights of the accused. *Hinkle v. State*, 50 Ala.App. 215, 278 So.2d 218.

■ In view of the court's admonitions and the language in *Allen*, supra, we are unable to find error.

### III

It is contended that appellant's conviction cannot stand due to the State's failure to establish his knowledge of companion's weapon. Counsel argues that without proof appellant knew the threat of force was being employed, no evidence existed he was an accomplice or had any intent to rob.

In the present case, appellant was not indicted for a conspiracy to commit a robbery, but as principal in the crime.

The statute pertaining to principals provides:

". . . [A]ll persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid or abet in its commission, though not present, must hereafter be indicted, tried, and punished as principals, . . ." T. 14, § 14, Code of Alabama, Recompiled 1958.

■ Although a community of purpose on the part of the conspirators to act crim-

inally must exist at the time the crime was committed, such combination may be formed in a flash. It need not be shown that the specific act complained of was by prearrangement. *Ray v. State,* 32 Ala. App. 556 28 So.2d 116.

The rule is well established that:

"When two or more persons enter upon an unlawful purpose, with a common intent to aid and encourage each other in anything within their common design, they are each responsible, civilly and criminally, for everything which may consequently and subsequently result from such unlawful purpose, whether specifically contemplated or not." *Stokley v. State,* 254 Ala. 534, 49 So.2d 284.

In *Williams v. State,* 81 Ala. 1, 1 So. 179, the issue of joint culpability was considered and Judge Somerville concluded:

" . . . [T]he responsibility for incidental and often for accidental results broadens with the magnitude or heinousness attached to the unlawful act specifically agreed to be perpetrated. This is upon the principle that every one is presumed to intend, and therefore must be held responsible for, the natural and probable consequences of his own acts. It necessarily follows that, where one person combines with another to do an unlawful act, he impliedly consents to the use of such means by his confederate as may be necessary or usual in the successful accomplishment of such an act. The more flagrant and vicious the act agreed to be done, the wider is the latitude of the agency impliedly conferred to execute it."

■ Participation and community of purpose may be shown by circumstantial evidence or inferred from the conduct of the participants. Appellant's complicity is a question for the jury. *Skumro v. State,* 234 Ala. 4, 170 So. 776; *Pearce v. State,* 4 Ala.App. 32, 58 So. 996.

Although the facts surrounding the incident given by the victim, are in conflict with appellant's version of what happened, it is for the jury to pass on their truth or falsity. *Stephenson v. State,* 28 Ala.App. 418, 185 So. 910.

■ Mere presence of appellant in the car would not make him a principal. *Raiford v. State,* 59 Ala. 106. Such facts as his presence in connection with his companionship, his conduct at, before, and after the commission of the act, are potent circumstances from which participancy may be inferred.

In the present case the evidence is undisputed that appellant was in the car during the alleged robbery and was sitting beside the driver who exhibited the gun. All three of the men in the car participated in the incident in various ways. Although the appellant did not use a gun or actually make any threats against Arlin Smith, it could reasonably be inferred that he aided in the commission of the offense.

It is our judgment the acts of the appellant in conjunction with those of his companions in the back seat and those of the driver with the gun, created a circumstance from which the jury was justified in concluding a common design to rob.

IV

■ At the conclusion of the court's oral charge, defense counsel approached the bench and requested appellant's written instructions be given. The judge declined and explained they had been incorporated in the court's oral charge. Appellant did not take an exception and announced "Satisfied." Counsel contends the refusal of appellant's requested charges was error.

We reviewed the refused charges and found they were covered by the court's oral charge or were invasive of the jury's province; their refusals were proper. T. 7, § 273, Code of Alabama 1940, Recompiled 1958.

**158**

### V

The evidence detailed above presented questions of fact for the jury and such evidence if believed was sufficient to sustain a conviction. Denial of the motion to exclude and the overruling of the motion for a new trial were proper. *Young v. State*, 283 Ala. 676, 220 So.2d 843.

Affirmed.

All the Judges concur.