TYSON, Judge.
Fred Garner was indicted for buying, receiving, concealing, or aiding in concealing one citizen’s band radio of the value of $160.00, the personal property of Elred I. Sims. The jury found the appellant guilty as charged and fixed the value of the stolen property at $70.00. The trial court then entered judgment, setting sentence at five years imprisonment in the penitentiary.
Elred I. Sims stated that in January, 1976, he owned a Johnson citizen’s band radio with the call letters KFZ1885 and that he had placed this citizen’s band radio in a pickup truck which he owned and allowed his son, Marshall Sims, to use.
Mr. Sims stated that he purchased the radio in question from Forbes Radio on Fourth Avenue in the City of Birmingham and that he paid $160.00 for it. He stated that the radio was a five-channel set, a Johnson Messenger 121, and that two of the buttons on the front of the radio were missing. Mr. Sims stated that he notified the Birmingham Police Department in January, 1976, of the missing C.B. radio, which he did not see again until the day of trial (April 5,1977). Mr. Sims stated that he had not given anyone permission to borrow or use this radio or to remove it from his pickup truck. He further stated that he had owned this radio for four or five years prior to the time that it became missing.
On redirect examination, Mr. Sims stated that he had seen the radio in question on one occasion at Birmingham City Hall, having gone by and examined it while it was in the possession of Police Sergeant McDonald.
Marshall Elred Sims stated that he was the son of Elred I. Sims, and, in January, 1976, had driven a pickup truck to the front of the Guin Company on Fifth Avenue South and Fifty Second Street where he parked on the street. Mr. Sims stated that a C.B. Messenger 121 radio was in the trunk at the time and he did not give anyone permission to borrow or use the radio or remove it from the truck. He further stated that, when he returned, the C.B. radio was missing and he did not see it again until he went by the Birmingham Police Headquarters.
Birmingham Police Officer Abraham Boyd stated that on September 12, 1976, he went to the Parade Service Station on Docena Road and there engaged the appellant, Fred Garner, in conversation. Mr. Boyd stated that he was dressed in civilian clothes, and that he asked Garner about purchasing some C.B. radios from him. Garner told him that he had several used C.B. radios and that they would be between $60.00 to $75.00 each. Garner then opened the trunk of the 1971 Chevrolet automobile, black over bronze in color, and he, Boyd, wrote down the tag number, Alabama 64-12703, a Walker County tag. Boyd stated that he looked at several of the C.B. radios in the trunk of Garner’s car and he purchased a Lafayette C.B. radio for $60.00 from the appellant. He stated that he saw two walkie-talkies and about nine or ten C.B. radios in the trunk at the time and that Garner kept the keys to the trunk of the Chevrolet car in his pants pocket. He stated that he asked Garner about a Johnson C.B. and Garner quoted him the price of $75.00 for it. Boyd further testified that he went back to Birmingham Police Headquarters and talked with Sergeant McDonald concerning what he had seen in Garner’s possession at the Parade Service Station. Boyd stated that he told McDonald that several of the radios had their call numbers scratched off and that he and Sergeant McDonald then went and swore out a search warrant. Boyd stated that Docena Road is located in Jefferson County, Alabama.
*408 On cross-examination, Boyd indicated there was a sign in front of the Parade Service Station which advertised C.B.’s for sale. He stated that a friend of his, a Mr. Tucker, had ridden out there with him on September 12, 1977, when he first talked with Garner, the appellant, about the C.B. radios. Tucker had previously been to Garner’s station. Boyd also indicated that some of the C.B. radios had their call numbers glued on them with paper stickers and others were etched into the metal. He stated that a number of the C.B. radios which he saw at the station had their numbers removed. Boyd stated that he also purchased a pistol from Garner for which he paid $75.00. He testified that he noticed some Johnson C.B. radios, some Realistic radios, and some Lafayettes, at least a dozen in all, in the trunk of Garner’s Chevrolet automobile. Boyd stated that Garner also had some C.B. radios in the trunk of a Cadillac automobile and he also opened the trunk and showed him some of these C.B. radios.
Jefferson County Deputy Sheriff Michael Lynn Moore testified that, accompanied by Sheriff’s Sergeant Swatek, he went to the Parade Service Station at Route 14, Box 146, on Docena Road in Jefferson County on the afternoon of September 15, 1976. There the search warrant was served on Fred Garner, the appellant, for the 1971 Chevrolet automobile. He stated that this station was located outside the municipal boundaries of the City of Birmingham.
Birmingham Police Sergeant T. W. McDonald stated that on September 15, 1976, he was present at a Parade Service Station on Docena Road in Jefferson County when a search warrant was served on Fred Garner, the appellant, by Deputy Sheriff Michael Moore. The officers then asked Garner to open the trunk of the Chevrolet automobile, which he did, and it contained twelve C.B. radios, two walkie-talkies, and in particular one Johnson Messenger 121 C.B. radio that still had some call letters and dates. McDonald stated that the automobile was a 1971 Chevrolet, black over bronze in color, with a Walker County 1976 tag, No. 64-12703. Sergeant McDonald also identified some photographs, which were made on that same afternoon, September 15, 1976, at the Parade Station, of the entrance and vehicles parked there, and in particular the trunk of the Chevrolet automobile in question.
On cross-examination, Sergeant McDonald'stated that he noticed a house trailer just to the left of the Parade Service Station and some vehicles parked in or near the station. He stated that Fred Garner, the appellant, told him the 1971 Chevrolet belonged to him and that he lived in the house trailer nearby.
Birmingham Police Sergeant C. S. Bailey stated that on September 15, 1976, he went to the Parade Service Station, located at Route 15, Box 146, on Docena Road in Jefferson County, and was present when a search warrant was served on Fred Garner, the appellant. The trunk of a black over bronze 1971 Chevrolet was opened and he was handed the key by Mr. Garner. Bailey stated, upon being shown several photographs, that they represented the position of the Chevrolet and the station on the afternoon in question. Bailey also indicated that Garner told him the 1971 Chevrolet belonged to him and he saw several C.B. radios in the trunk, also a couple of walkie-talkies, and that these items were inventoried and taken to the Jefferson County Police property locker and there locked in it.
Appellant’s motion to exclude the state’s evidence on the grounds that it failed to make out a prima facie case was overruled.
James Simmons stated that he worked part-time during the summer of 1976 at the Parade Service Station owned by Fred Garner on Docena Road in Jefferson County, Alabama. He stated that one Sunday he was helping to take apart a damaged 1965 blue Oldsmobile and that James Clay and Richard Lewis were also helping to take the car apart. Simmons indicated that Clay was cleaning out the trunk of the car when he removed a spare tire and jack. He then saw Clay remove a C.B. radio from the trunk. He stated that all of these items *409 were turned over to Garner. Simmons said the men took the motor out of this car and put it in a different automobile.
On cross-examination, Simmons said that Garner kept used radios at his station which he repaired for other people, but that the C.B. radio removed by Clay from the damaged Oldsmobile was a Johnson Messenger C.B. Simmons also indicated that he worked regularly at TCI and occasionally worked on weekends for Garner.
James Clay stated that he worked for Cochran Roofing Company in Birmingham and on weekends did some part-time work for Fred Garner at the Parade Service Station located on Docena Road. He stated that he remembered a Sunday afternoon in which Mr. Simmons and Mr. Lewis helped him take a wrecked blue Oldsmobile apart and remove the parts. Clay stated that he removed a Johnson Messenger C.B. radio from the trunk of this car.
Fred Garner stated that he owned a Parade Service Station located at Route 15, Box 146, on Docena Road near the Adams-ville Cutoff in Jefferson County in 1976. He stated that he sold canned food, milk, bread and cigarettes. He stated that he had a sign which advertised that he worked on C.B. radios. Garner stated that he bought several new C.B.’s from a salesman with the Hav-a-Tampa Jewel Cigar Company and that a man named “Slim” would come by and pick up C.B.’s, repair them, and bring them back to him. Slim worked at TCI. Garner indicated that in 1976 he bought a wrecked, blue, 1965 Oldsmobile from a man named Eugene Cooper and paid him about $45.00 for it. He said that one Sunday afternoon he had James Simmons, James Clay, and Richard Lewis take the car apart, that Clay removed a Johnson C.B. radio from the trunk and brought it to him. He said he thought it was a Johnson Messenger. He said that when the men left he put the radio in the trunk of the 1971 Chevrolet where he kept these radios locked. He said he was present when a black police officer came to the station and talked with him about buying a C.B. radio, then a couple of days later several Birmingham police officers came out and served a search warrant on him. Garner indicated that about six or seven officers were present, that he gave them the keys to the trunk of the Chevrolet automobile and they removed some C.B. radios from it.
On cross-examination, Garner indicated he only knew his repair man as “Slim,” that he knew how to get to “Slim’s” house, and “Slim” would come by a couple of times a week to pick the C.B.’s up, repair them, and bring them back. He said Slim lived below Adamsville and that he had his telephone number. He further stated that the Hav-a-Tampa Jewel salesman’s name was Clayton Sanders, that he had been coming by his station for about three years, and at one time he, Garner, had bought five radios from him. Garner stated that he lived next to his station in a house trailer.
Birmingham Police Sergeant T. W. McDonald was recalled and testified that on the afternoon of September 15,1976, he and Sergeant Bailey took twelve C.B. radios out of the trunk of the 1971 Chevrolet automobile at the Parade Service Station. He said that several of these had their call numbers removed and that the Johnson Messenger was the one radio in the trunk that had numbers on it. Sergeant McDonald also stated that he. saw two sets inside the service station, lying on the counter, that these were new and boxed, that they appeared to have come from Hav-a-Tampa Cigar Company, and that they left them there. McDonald then described each of the twelve radios which were inventoried and taken to Police Headquarters. He also stated that the appellant, Fred Garner, told him he often had people bring radios to be repaired and he would lock these in the trunk of the Chevrolet automobile.
I
Appellant’s counsel calls this Court’s attention to three instances which occurred during trial wherein the trial judge interrupted the questioning of witnesses to ask questions by the court.
The first occurred during the examination of the witness James Clay (R. pp. 59- *410 62) when the trial judge asked, “When did you first find out you were going to testify in this case,” to which the witness replied, “It wasn’t this month, seems like it was after Christmas when I got the subpoena.” The witness also stated he had discussed the matter with Mr. Simmons concerning the C.B.’s
No objection or other motion was interposed to this line of questioning by the court.
The second instance where questioning by the court occurred is on record pages 77-78 when the trial court, following cross-examination, asked the appellant the following question, “Were the C.B.’s in the trunk of the Chevrolet to be repaired or thrown away,” to which the appellant replied, “Some of them had been repaired, maybe one or two, and Slim would pick up some in the afternoon and we would leave the others in the trunk.”
Again, no objection was interposed or other motion made to this line of questioning by the trial judge.
The third instance occurred following redirect examination of the appellant when the court (R. pp. 85-86) asked about other radios in the trunk of the Cadillac automobile, to which the appellant replied, “These radios belong to a friend of mine and I did not want these mixed up with those which had been left to be repaired.” Again, no objection or other motion challenged this line of questioning by the trial judge. The rule covering this situation is well-stated in Brandes v. State, 17 Ala.App. 390, 85 So. 824, as follows:
“. . The unquestioned province of the court—in fact, the solemn and sacred duty of a trial judge—is the development and establishment of the truth, and in this connection it is always permissible for the court, and if it appears necessary for him to do so it is his duty, to propound to witnesses such questions as it is deemed necessary to elicit any relevant and material evidence, without regard to its effect, whether beneficial to the one party or the other. Beal v. State, 138 Ala. 94, 35 So. 58. In fact, it is a sacred duty of a judge, both in civil and criminal cases, to give strict attention to the evidence, and to all facts and incidents attendant upon the trial, to propound questions to witnesses if in his judgment he deems it necessary, and to supervise and control the proceedings before him, with a view that justice may not miscarry. As before stated, there is nothing in the record before us even tending to show that the trial judge transcended his authority or abused the discretion with which, under the law, he is vested.
“It is our opinion that the trial court properly exercised its prerogative in the ascertainment of certain aspects of the testimony, as set forth above, and that such did not invade the rights of the accused. Lovejoy v. State, 33 Ala.App. 414, 34 So.2d 692.”
Hinkle v. State, 50 Ala.App. 215, 278 So.2d 218; and Smith v. State, 57 Ala. App. 151, 326 So.2d 680.
Further, the questioning by the trial judge, in our opinion, was designed to eliminate confusion in the answers given by the witnesses, so we see no error in the questions asked. Franks v. State, 45 Ala.App. 88, 224 So.2d 924; and Smith v. State, supra.
Where, as here, no objections were made or exceptions taken to the questioning or comments, nothing is presented here for review. Rice v. Hill, 278 Ala. 342, 178 So.2d 168; State v. Boyd, 271 Ala. 584, 126 So.2d 225; and Davis v. State, 54 Ala.App. 115, 305 So.2d 390.
We have carefully examined this record and find same to be free of error. The judgment is therefore
AFFIRMED.
All the Judges concur.