BOWEN, Judge.
The defendant was indicted and convicted for the robbery of Joseph William Dens-more. Sentence was ten years’ imprisonment.
The only issue presented is the sufficiency of the evidence.
In Thomas v. State, 363 So.2d 1021 (Ala.Cr.App. 1978), this Court held:
“The mere fact that a defendant is sitting in the driver’s seat of an automobile into which a robber enters immediately following the robbery affords no legal inference that the defendant is the ‘get-away’ driver or a participant in the robbery. While such circumstances do raise a suspicion that the defendant might be involved in the crime, they alone afford no circumstantial evidence of involvement or participation but only tend to support the possibility.” Thomas, 363 So.2d at 1023. (emphasis supplied)
Thus the mere presence of a defendant in an automobile into which a robber flees is circumstantial evidence of the driver’s complicity but it is not sufficient to authorize a conviction in and of itself. However any fact which would supply an inference that the defendant had knowledge of the robbery or that would indicate a consciousness of guilt will be sufficient to remove the factual situation from beyond the application of Thomas. Smith v. State, 57 Ala. App. 151, 157, 326 So.2d 680 (1975), cert. denied, 295 Ala. 424, 326 So.2d 686 (1976).
The facts of the instant case are far more incriminating than those found in Thomas. Here the State’s evidence was not limited to the bare showing that the defendant was sitting in the driver’s seat of the automobile into which the robber fled.
Geraldine Mickles, who was living with Charles Martin, testified that Martin awoke about 7:00 on the morning of May 29,1979. He telephoned the defendant, whom he had known for about one year, and then “sat down and waited.” “[Ajbout 8:30 or a little after 8:00, something like that,” the defendant arrived at Martin’s apartment. The two men took two big boxes and placed them in the back seat of the defendant’s automobile. The defendant only stayed about a minute before he and Martin left together in the defendant’s car. The defendant had his two young children with him.
Joseph William Densmore owned and operated the 29th Street Grocery. He testified that at approximately a little after 8:00 on the morning of May 29th, he was robbed of approximately two hundred dollars by a single gunman, whom he subsequently iden *695 tified as Charles Martin. During the robbery, Mrs. Densmore pushed a button which signaled the APC Alarm Company. As Martin was making his escape, Mr. Dens-more shot him with a shotgun. The defendant stumbled and dropped his pistol and most of the money. Although Martin had received injuries to his upper thigh, buttocks and back he managed to escape by running between two houses. Mr. Dens-more retrieved the money and the pistol and returned to his store where the police were already present. Police records show that a complaint on this robbery was received at 9:41 that morning.
Robert Perkins was Charles Martin’s brother. He testified that at approximately 10:10 that same morning the defendant came to his door and told him that “Charlie had been shot.” Perkins rushed out and saw his brother in the back seat of the defendant’s car. He noticed that Martin was bleeding from the mouth and did not observe any wounds. Perkins stated that he tried to get his brother’s pulse and revive his breathing, but Martin was already dead. Perkins then telephoned the police and the rescue squad. Police records show that a call that a man had been shot was received at 9:50 A.M. When Perkins returned to the defendant’s automobile he noticed “something that wasn’t there before.” Money, about sixty or seventy dollars in small bills according to Perkins, had been “spread just randomly across Charlie’s body and between he and the bottom of the seat.”
While waiting on the police, Perkins asked the defendant three times how Martin got injured. The first two times Perkins’ wife and two daughters were in the room and the defendant whispered to Perkins that he would tell him later. The third time Perkins asked, the defendant told him that Martin “tried to knock a store and the man shot him.” Twice, the defendant asked Perkins to take Martin out of his car but Perkins refused. Perkins did not see any big boxes in the back seat of the defendant’s automobile.
Other witnesses testified that when Martin was removed from the automobile a pair of sunglasses and eleven dollars were found under his body.
The first police officer arrived at Perkins’ apartment between 9:45 and 10:00 A.M. Martin’s body had not been moved but this officer only saw a “couple of bills .. . maybe two, three, maybe four bills” in and on the back seat of the defendant’s automobile.
In front of Perkins’ apartment, Detective Sergeant William T. Gaut questioned the defendant as part of his initial investigation. Kelley v. State, 366 So.2d 1145 (Ala.Cr.App. 1979); Sullivan v. State, 351 So.2d 659 (Ala.Cr.App.), cert. denied, 351 So.2d 665 (Ala. 1977). At that time Sergeant Gaut did not know that a robbery had occurred. The defendant told Sergeant Gaut that he did not know what had happened, that he was just riding down the street on the way to his mother’s house when Martin “flagged” him down and asked for a ride to his brother’s house. The defendant admitted knowing Martin but stated that “he didn’t know what was wrong with him or whether he had been shot or stabbed or anything else.”
The evidence in this case, unlike that in Thomas, furnishes far more than mere possibility, suspicion or guesswork of the defendant’s guilt. The reasonable and legal inferences from the evidence supply the basis for proof beyond a reasonable doubt.
The State placed the defendant with Martin both immediately before and after the robbery. The State offered evidence from which the jury could legally infer that the defendant placed money on top of Martin’s body and that he knew Martin had been in a robbery. The conflict in the opposing statements the defendant made to Sergeant Gaut and Perkins indicates a consciousness of guilt. As noted in Thomas these additional facts, although they are only circumstantial evidence of guilt, are sufficient to create a jury question on the issue of the defendant’s guilt or innocence. Therefore, the defendant’s motion to ex- *696 elude the State’s evidence was properly denied.
We have carefully searched the record for error and found none. The judgment of the Circuit Court is affirmed.
AFFIRMED.
All Judges concur.