Kenneth Blaylock was indicted by the grand jury for the theft of one bicycle, one clock radio and two dollars, the property of Essie Hollis, by threats and by the use of a deadly weapon, a pistol, in violation of § 13A-8-41, Code of Alabama. *Page 1300 
The jury found the appellant "guilty of robbery in the first degree as charged" and following a lengthy sentencing hearing, the trial court set sentence at 35 years' imprisonment.
About 9:30 on the evening of August 27, 1980, Essie Lee Hollis was at her home at 1625 18th Street, SW, in the City of Birmingham, with her two sons, Roderick and Randall, and her daughter, Michele. The appellant and some companions came to the door and at pistol point pushed Mrs. Hollis, one son and her daughter who happened to be at home, into a closet and at pistol point removed a bicycle, a clock radio and two dollars. The victims were cursed for not having "anything more." At trial Mrs. Hollis and her son and daughter made a positive in-court identification of the appellant, Kenneth Blaylock, based upon their observations at the time of the robbery. The bicycle was recovered the following day through a telephone call from a friend.
The appellant and his mother gave alibi testimony denying his presence at the home of the victims on the evening in question. Since no material issue is made of the facts, further details are not set forth.
 I
The first issue on this appeal concerns a "Motion in Limine" filed prior to trial by the appellant, seeking instructions from the trial judge to the district attorney's staff as follows: (Volume II, R. 214).
 "ACCORDINGLY, defendant moves the court to instruct, prior to trial, the District Attorney and his staff and any and all witnesses called on behalf of the State to refrain from any mention of the `BAQ' or any other youth gang or club for the reasons set forth in defendant's motion."
At a pretrial hearing on the motion, the following took place: (Volume I, R. 2 and 3).
"THE COURT: All right.
 "MR. BLALOCK: I would like to make a motion in limine. What it is, Your Honor, we are tying to keep out of the hearing of the jury the word BAQ and all association with BAQ my client may have. Because, BAQ, the papers have indicated, has been highly publicized as a youth gang which has terrorized the West End and parts of Birmingham, Alabama.
 "And we feel that if BAQ is introduced and my client is associated with the youth gang, whether or not he is a member, it would be highly prejudicial. And the prejudicial value would outweigh the probative value. That is basically it.
"THE COURT: What context would it come in?
 "MR. BLALOCK: Well, it is going to come in as in the earlier habeas corpus hearing where one of the State's witnesses testified that one of the robbers had a T-shirt with BAQ on it.
 "THE COURT: Well, that won't come in unless he was found later on with that same shirt, or unless that shirt was later connected with him. Just the fact he had on a T-shirt with BAQ with nothing else, I am not going to admit.
 "MR. REECE: I don't recall whether there was any statement made at that time.
 "THE COURT: Now, if he said something like I am with BAQ, or something like that, that comes in.
 "MR. BLALOCK: No, sir, there has been no statement made to that by the defendant.
 "THE COURT: But, just the fact he had on a T-shirt, no.
 "MR. BLALOCK: Are you talking about during the habeas corpus hearing?
"MR. DAVIS: Yes.
 "MR. BLALOCK: It is not mentioned except the fact that the transcript shows that the only time BAQ was mentioned was when Mr. Robert Collins said that one person had on a yellow T-shirt that had BAQ on the front.
 "THE COURT: Unless that shirt is connected with him to show his identity. So, tell him not to say that. I will declare a mistrial, that is all I will do."
Both counsel for appellant and counsel for State of Alabama concede in brief that *Page 1301 
they are unable to cite this court with authorities from the State of Alabama concerning the use of such Motion in Limine.
However, a number of authorities from other jurisdictions are included in their respective briefs. In State v. Garrett,183 N.W.2d 652, (Iowa 1971), we find the following:
 "`We deem this appeal an appropriate one in which to say that cases are coming to this court revealing questionable use of the motion in limine-questionable in the manner of its use or in its use at all. The motion is a drastic one, preventing a party as it does from presenting his evidence in the usual way. Its use should be exceptional rather than general. Trial counsel would be well advised to keep in mind the suggestions found in Sidney, Motion in Limine, Workshop Outlines at Ninety-Second Annual Meeting, Iowa State Bar Association, A1 at A8-A9 (1965). The motion should be used, if used at all, as a rifle and not as a shotgun, pointing out the objectionable material and showing why the material is inadmissible and prejudicial. Since no one knows exactly how the trial will proceed, trial courts would ordinarily be well advised to require an evidentiary hearing on the motion when its validity or invalidity is not manifest from the face of the motion.'" (Emphasis supplied)
In the case at bar, counsel asserts error occurred during the testimony of Birmingham Police Sergeant Holcombe with reference his investigation, the alleged error occurring during the following colloquy: (Volume I, R. 134-135).
"Q. Where was Roderick and the other people seated?
 "A. Okay. We were all on the front porch and they were sitting on the steps side-by-side and Roderick was in the center. And I walked up to them — and after the officer told me why they wanted me out there, then briefly I asked Ms. Hollis what happened that night so I would have an idea of what I was looking for. And they told me. And then I went to the car and got the pictures of the youth gangs working that area.
 "Q. These pictures, do they show people of the same race?
"A. Yes, sir.
"Q. About the same build?
"A. Yes, sir.
 "Q. Does anybody in these pictures have on any distinctive clothing or anything that would hold them out over anybody else?
"A. No, sir.
 "Q. Would you show me which picture is Mr. Blaylock's picture?
 "A. Yes, sir. It does happen to be the first one today.
 "Q. How long after Roderick picked that picture out was it before Ms. Hollis picked the picture out?
"A. It was almost a simultaneous action.
"Q. What did she do or say?
"A. She said that was him.
 "Q. Was there any hesitation about her picking it out?
"A. No, sir.
"Q. Was she as positive as Roderick was?
"A. Yes, sir.
 "Q. So, when you left their house that day, you had two positive identification witnesses?
"A. Yes, sir.
"Q. That Kenneth Blaylock was the man?
"A. I did."
It should be specifically pointed out here that at no point in his testimony does Sergeant Holcombe refer to the appellant as being a member of the BAQ nor any other "youth gang" nor, in fact, is he identified by the wearing of a T-shirt or other item of clothing which might indicate membership in such youth gang.
Further, no objection appears in any of the testimony of Sergeant Holcombe during trial nor was a motion for mistrial made with reference membership in the BAQ, or wearing of a T-shirt or other item of clothing. *Page 1302 
In this state of the record, we find that no error is preserved for our review; nor indeed was the trial court's ruling on the Motion in Limine violated. The trial judge's ruling is hereinabove quoted and it is clear from the above-quoted colloquy that Sergeant Holcombe did not violate this ruling. In this state of the record, we see no error in the above-noted exchanges. Likewise, a mistrial is "too drastic a penalty" under the facts of the present case. See Kendricksv. State, 378 So.2d 1203 (Ala.Cr.App. 1979) and authorities therein cited.
 II
Appellant next asserts as error the action of the trial judge in excluding the jury during the examination of Mrs. Hollis concerning what apparently was a change in her testimony concerning the events on the night at issue.
Following the court's questioning of Mrs. Hollis, completed outside the presence of the jury, and her being called to the witness stand, then Mrs. Hollis conceded she had changed her story and positively identified the appellant at trial because the appellant's mother and some friends had visited her at her home three or four times. The ruling of the trial court is as follows: (Volume I, R. 105-106)
 "(Whereupon, at 5:30 P.M. the jurors retired to the jury room and the following was had and done out of the presence and hearing of the jury.)"
 "THE COURT: Let the record show that when Ms. Hollis came in the courtroom she looked at the people in the audience all the way from the door to when she made the turn to the witness box. I think that there has been intimidation in this case. You tell them, now, the grand jury is in session and if anybody calls this woman, goes by her house, that is a crime to intimidate a witness.
 "And you can tell them that. Now, I am going to tell her if anybody calls her or comes by her house, to tell me. If that happens, I mean — if the Court of Appeals may — if it ever gets to that, they may say I shouldn't have done what I did. But, as long as I think witnesses are intimidated by people and are not telling the truth, I am going to try to get to the bottom of it. And there has been much too much of that going on around here. And that strikes at the whole heart of the system and I am going to do everything I can do to see that that is not done. I know you probably feel you take exception to what I have done, but I am just telling the reasons that I did it. It hasn't got anything to do with you or this case, but it is just something that should never happen. And I know it does happen, and when there is evidence of it, I am going to try to do something about it.
 "MR. BLALOCK: Let the record reflect I do in fact take exception."
 "(Whereupon, court was in recess until the following day, September the 15th, 1981, at 9:22 A.M. the jurors were brought in and the following was had and done before Court and jury.)"
We believe the applicable legal principles are appropriately set forth in the following statement found in Garner v. State,364 So.2d 406 (Ala.Cr.App.), cert. denied, 364 So.2d 411 (Ala. 1978):
 "`The rule covering this situation is well-stated in Brandes v. State, 17 Ala. App. 390, 85 So. 824, as follows:
 `. . . The unquestioned province of the court — in fact, the solemn and sacred duty of a trial judge — is the development and establishment of the truth, and in this connection it is always permissible for the court, and if it appears necessary for him to do so it is his duty, to propound to witnesses such questions as it is deemed necessary to elicit any relevant and material evidence, without regard to its effect, whether beneficial to the one party or the other. Beal v. State, 138 Ala. 94, 35 So. 58. In fact, it is a sacred duty of a judge, both in civil and criminal cases, to give strict attention to the evidence, and to all facts and incidents attendant upon the trial, to propound questions to witnesses if in his judgment he deems it necessary, and to supervise and control the proceedings before him, with *Page 1303 
a view that justice may not miscarry. As before stated, there is nothing in the record before us even tending to show that the trial judge transcended his authority or abused the discretion with which, under the law, he is vested.
 `It is our opinion that the trial court properly exercised its prerogative in the ascertainment of certain aspects of the testimony, as set forth above, and that such did not invade the rights of the accused. Lovejoy v. State, 33 Ala. App. 414, 34 So.2d 692.'
 "Hinkle v. State, 50 Ala. App. 215, 278 So.2d 218; and Smith v. State, 57 Ala. App. 151, 326 So.2d 680.
 "Further, the questioning by the trial judge, in our opinion, was designed to eliminate confusion in the answers given by the witnesses, so we see no error in the questions asked. Franks v. State, 45 Ala. App. 88, 224 So.2d 924; and Smith v. State, supra."
As noted in the above authority, the trial judge's sacred obligation is in the ascertainment of truth. We believe that the above trial judge in the case at bar fully recognized the problem with which he was dealing and handled it in a commendable and proper manner. No error is found.
 III
Finally, the appellant asserts as error the trial judge's actions in sentencing the appellant to 35 years' imprisonment, asserting that the appellant is a "first time felony offender" and that this sentence constitutes "cruel and unusual punishment."
The trial court conducted a separate sentencing hearing in this case and found that as a juvenile, the appellant had been brought into Family Court on six different occasions. Some of these instances were with reference an attempted murder, a first degree burglary and an assault which involved the shooting of a young man. It was also brought out that certain cases were dismissed in Family Court because the witnesses declined to appear and testify against this appellant. In reviewing this record, we find the following statement by the trial judge: (Volume I, R. 192)
 "THE COURT: Mr. Blaylock, looking over this, I see the motive for this doesn't seem to be pecuniary. For instance, in this case, where you broke in in the middle of the night with a fourteen year old boy, five year old girl, and the lady living there with those children, two dollars and bicycle. It seems to run throughout your record. The motive seems to be stark, sheer terror. Assault, thirteen year old boy, attempted murder. Assault in the second degree. Assault in the second degree. Burglary in the first degree. Murder. Robbery in the first degree, which is what this is; where the victims are kids, ladies. In this case, they are made to lay down, get in the closet, sawed off shotgun, .45 automatic. And your record is replete with that sort of thing. Every victim of this reputed gang, every case I have tried involved, the victims are always kids, people who can't fight back. And there is always a history of intimidation of witnesses. The Court, nor can society, tolerate that kind of behavior." "It is the judgment and sentence of the Court that you be imprisoned in the penitentiary for a term of thirty-five years. Notice of appeal."
It should be first here noted that the sentence is within the range of permissible punishment for the offense of robbery in the first degree. In light of the particular circumstances of this appellant's activities as above set forth, we are of the opinion that the trial judge properly exercised his discretion in sentencing this appellant.
It is not proper for the appellate court to review the severity of a sentence unless there has been a clear abuse of discretion. We find no such abuse in this case. See Jenkins v.State, 367 So.2d 587 (Ala.Cr.App.), cert. denied, 367 So.2d 590
(Ala. 1979); Carlton v. State, 342 So.2d 1382 (Ala.Cr.App. 1977); Moore v. State, 54 Ala. App. 463, 309 So.2d 500 (1975).
We have carefully examined this record and find no error therein. The judgment is hereby affirmed.
AFFIRMED.
All the Judges concur. *Page 1304