318 So.2d 359

**Donald STONE**

**v.**

**STATE.**

**I Div. 562.**

Court of Criminal Appeals of Alabama.

July 29, 1975.

Kenneth Cooper, Bay Minette, for appellant.

**664**

William J. Baxley, Atty. Gen., and Carol Jean Smith, Asst. Atty. Gen., for the State.

HARRIS, Judge.

Appellant stands convicted of the crime of false pretense for which he received a ten-year sentence in the penitentiary. He was represented by retained counsel at all stages of the trial below and he is represented by trial counsel on this appeal. At arraignment he pleaded not guilty.

Omitting the formal parts, the indictment reads:

"The Grand Jury of said County charge that before finding this indictment on, to-wit: May 31, 1974, Donald Stone did falsely pretend to Frances Melton and Jane Spradley, with intent to defraud, that he had certain stones which were true diamonds, of the value of $12,600.00 and by means of such false pretense and by delivery of said stones to Frances Melton and Jane Spradley, did obtain from the said Frances Melton and Jane Spradley $12,600.00 in lawful currency of the United States of America, against the peace and dignity of the State of Alabama."

Prior to trial counsel for appellant filed a petition alleging that appellant showed symptoms of mental incompetency and insanity and sought an inquisition into his mental status both as to the time of the commission of the offense and presently.

The court directed the Sheriff of Baldwin County to deliver appellant to the Alabama State Hospital, Searcy Hospital, at Mt. Vernon, to make an examination, observation and determination as to his mental condition. This order was issued on August 12, 1974. On September 17, 1974, the Superintendent of the hospital, the Chief of the Medical Staff, and a Staff Psychiatrist filed a report with the court stating, in part, "After full study and this period of observation, it is the opinion of each of us separately, and our opinion jointly and collectively, that the said Donald Stone is presently sane and competent. During all the time of hospitalization there has been no evidence of psychosis. It is our opinion that this patient knows the difference between right and wrong and is able to adhere to the right. His diagnosis has been offered as Antisocial Personality. It is also our opinion that he was sane and competent at the time of his admission to Searcy Hospital. It is our opinion that at the time of the alleged crime he was sane and competent, knew what he was doing and could adhere to the right."

The evidence in this case is in hopeless conflict. The evidence for the state tended to show that a gigantic fraud was perpetrated upon the two women named in the indictment. The evidence on behalf of appellant tended to show that he was not involved in any wrongdoing. Only a jury

could unscramble this conflicting testimony and arrive at the truth.

Mrs. Jane Spradle testified that she lived in Pensacola, Florida, and ran a flea market on Pensacola Boulevard. That she knew a Mrs. Ilene Hendrich, the mother of appellant, though she did not know Mrs. Hendrich had a son by the name of Donald Stone. She said she rented a table to Mrs. Hendrich on some weekends at the flea market and knew that she sold jewelry. She stated that sometimes Mrs. Hendrich sold diamonds. She further testified that Mrs. Hendrich initiated a conversation with her concerning the purchase of some diamonds. On May 30, 1974, Mrs. Hendrich told her she had some diamonds that she wanted to sell for $12,600.00.

Mrs. Spradle was a good friend of Mrs. Frances Melton and she told Mrs. Melton about the diamonds and asked her if she would be interested in going in with her and purchase these diamonds. Mrs. Melton said she would have to call her husband to see about borrowing half of the purchase price, viz., $6,300.00. She contacted her husband and he told her to go to the bank and borrow the money.

Mrs. Melton testified that she did not know Mrs. Hendrich but she had bought a diamond from a woman who had bought the diamond from Mrs. Hendrich. That it was a good diamond and she paid $1,800.00 for it.

Mrs. Melton further testified that she had several telephone conversations with Mrs. Hendrich prior to May 31, 1974, and was familiar with her voice. She stated that she learned about Mrs. Hendrich through another friend, a Mrs. Boutwell, who told her Mrs. Hendrich brought some alleged diamonds to her house prior to May 31, 1974, but when Mrs. Hendrich learned that a jeweler was coming over to appraise the diamonds, she gathered them up and ran before the jeweler arrived. Mrs. Melton did not think too much about this incident as she had purchased a good diamond from a friend who bought it from Mrs. Hendrich.

Mrs. Melton further testified that she had several telephone conversations with Mrs. Hendrich on May 31, 1974, after she and Mrs. Spradle had borrowed the $12,600.00. These conversations related to where they would meet to complete the sale and purchase of the diamonds. Mrs. Melton asked her to come over to her house or to the home of Mrs. Spradle and Mrs. Hendrich replied that she wanted them to meet her in the churchyard at the Catholic Church at Lillian, Baldwin County, Alabama. Mrs. Hendrich told her she would be in a black and white Benz and Mrs. Melton thought a Benz was a Mercedes and would be parked in the churchyard. Mrs. Melton did not know that Mrs. Hendrich had a son named Donald Stone.

Mrs. Melton picked up Mrs. Spradle on May 31, 1974, and drove to Lillian, Alabama, as directed by Mrs. Hendrich. When they arrived they did not see a Benz or Mercedes but were stopped by a man wearing dark glasses who had parked a white van truck with black stripes with the word "Boogie" on the back of the van. This man got in the back seat of Mrs. Melton's car and said he was Don Stone and was running an errand for his mom. He explained that his father was dead and that his mother had remarried a man by the name of Hendrich.

Stone had a black cloth and he opened it and displayed nineteen white small packages. Mrs. Melton got in the back seat and Stone opened the packages for Mrs. Melton to see. He would not let her pass the stones to Mrs. Spradle on the front seat. Mrs. Melton thought they were diamonds and gave Stone her $6,300.00 and he counted it. He appeared very nervous and when Mrs. Spradle gave him her $6,300.00 he did not count it but told her he was in a hurry and if the amount was not correct, he would let her know later. He told them he was going to carry the money to the airport and he got out of the car and got

in the van truck and hurriedly left the churchyard.

Mrs. Melton and Mrs. Spradle immediately left and returned to Pensacola and went directly to see Mr. John Beasley who owned and operated Beasley & Son Custom Jewelers and Repair Shop. Mrs. Melton and Mrs. Spradle had been customers of Mr. Beasley for a number of years. Mrs. Melton showed him one of the stones and he immediately told both women the stone was glass. He examined two or three more and they were glass also.

Mr. Beasley testified for the state and according to his testimony the stones were not diamonds and at most were worth only $35.00 a carat. He described the stones as stronium titanate or "Fabulite" and not diamonds. On the witness stand he opened one packet and stated that it was one Fabulite imitation cut stone resembling a diamond worth about $80.00 and a smaller one which he said was worth about $50.00. There were twenty of these imitation stones in all and he stated they certainly were not worth anything like $12,600.00.

As soon as Mrs. Melton got home, she called the Pensacola Police Department and told them what had occurred. They gave her a number to call in Foley and the number was the Police Department. The officer told Mrs. Melton to get Mrs. Spradle and meet him at the Catholic churchyard where the transaction occurred. They met the officer, Bobby Stewart, as directed and he got them in the patrol car and carried them to the home of Mrs. Hendrich. Mrs. Melton told the officer that she had never met Mrs. Hendrich but she would recognize her voice. The officer brought Mrs. Hendrich to the patrol car and had a conversation with her at the door of the patrol car so that Mrs. Melton could hear her voice. The officer told her that if she would refund the money, they would not take her in. She said she did not know anything about any money as she had not sold Mrs. Melton or Mrs. Spradle

any diamonds. Mrs. Melton told the officer she recognized Mrs. Hendrich's voice as the woman who told her over the telephone that she wanted $12,600.00 for the diamonds and to meet her in Lillian, Alabama, at the Catholic churchyard to make the sale and purchase. Mrs. Spradle knew Mrs. Hendrich as she had rented her a table at the flea market. While they were parked in the patrol car, they saw the white and black striped van truck with the word "Boogie" on the back of the van. The officer asked Mrs. Hendrich where Stone was and she said he left and she did not know where he had gone.

Mr. Stewart kept the glass stones in his possession until he turned them over to the Chief of Police who locked them in a safe where they remained until they were brought to appellant's trial. They were identified as being in the same condition as they were in when they were surrendered to the officer by Mrs. Melton and Mrs. Spradle who testified they were in the same condition as when they were given to them by appellant on the afternoon of May 31, 1974. These were admitted in evidence over appellant's objections.

Mrs. Hendrich testified and denied having called Mrs. Melton and telling her to come over and bring the money because the diamonds were there.

Appellant testified that on the afternoon in question he went to a brown Buick automobile in Lillian, Alabama, where a man handed him a bunch of small envelopes and said you are to get twelve thousand six hundred dollars for these. He then got in his van and went to the Catholic church parking lot where he gave the packets to Mrs. Melton and received the money. He then got in his van and followed the brown Buick up the highway and stopped. He got out and gave the man the $12,600.00. The man then handed him $20.00 in return for his services.

At the conclusion of the state's case appellant made a motion on the ground that a

prima facie case had not been proved against appellant.

In *Holloway v. State,* 37 Ala.App. 96, 64 So.2d 115, the court held:

"Generally speaking, the crime includes a false representation of an existing or past fact which deceives and which induces the person to whom the deception is made to part with something of value. The falsity of the representation must be known to the accused and it must have been made with intent to defraud.

In other words, the offense consists of: (1) The pretense. (2) Its falsity. (3) Obtaining property by reason of the pretense. (4) Knowledge on the part of the accused of the falsity of the pretense. (5) Intent to defraud.

In the case of *Young v. State,* 155 Ala. 145, 46 So. 580, 581, the Supreme Court made this observation:

'And if a person should fraudulently represent a fact to be true, knowing at the time that it is not true, and resorts to the fraudulent representation to obtain money from another, and does so obtain it, he would be guilty of 'defrauding' another by 'deceitful means,' and we do not doubt he would be guilty of obtaining the money under false pretenses.'

The case of *Eaton v. State,* 16 Ala.App. 405, 78 So. 321, 322, presents circumstances somewhat similar to those in the case at bar. In response to the review on appeal we held:

'The giving of the check, if given without an explanation to the contrary, was in and of itself a representation, symbol, or token that the defendant had money on deposit in the bank on which the check was drawn, and if this check was given with the intent to deceive the seller of the goods in this case, and he was thereby deceived, the defendant was guilty. The jury by its verdict so determined, as it had the right to do, and we find no reason in the record for disturbing the judgment of conviction.' "

In *Bridges v. State,* 284 Ala. 412, 225 So.2d 821, the court said:

"The rule is clearly established in this State that a verdict of conviction should not be set aside on the ground of the insufficiency of the evidence to sustain the verdict, unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it was wrong and unjust. *Cobb v. Malone,* 92 Ala. 630, 9 So. 738; *Stewart v. State,* 38 Ala.App. 365, 84 So.2d 658; *Evans v. State,* 39 Ala.App. 404, 103 So.2d 40, cert. denied 267 Ala. 695, 103 So.2d 44; *Jones v. State,* 40 Ala.App. 419, 114 So.2d 575."

In *Haggler v. State,* 49 Ala.App. 259, 270 So.2d 690, this court said:

"Where there is legal evidence from which the jury can by fair inference find the defendant guilty, this Court has no right to disturb the verdict. Whether there is such evidence is a question of law, its weight and probative value is for the jury. *Bolton v. State,* 21 Ala.App. 373, 108 So. 631."

■ To constitute the offense of false pretense, it is enough if a material part of the pretense be false; that it be made with the intent to defraud, and that it induces the person sought to be wronged, to part with his property, and there are proper inquiries for the jury under appropriate instructions from the court. *Wilkerson v. State,* 140 Ala. 155, 36 So. 1004.

The evidence in the instant case fully complies with the rule announced in *Wilkerson v. State,* supra.

According to the testimony of the victims appellant said, "We are selling them at 39 carats. It might be over, but we are

selling them at 39 carats. He told us there was nothing wrong with the stones. He said we could tell anyone where they came from; that they were not hot, and that we were not buying any stolen goods. He did not deal in that and that they could be sold anywhere and taken anywhere. He said they were good diamonds."

According to Mr. Beasley, the jewelry expert, "The stone and the others that I looked at several after looking at this particular one, we opened several of the packets and they were all of the same material, like I said, which is a man-made material which is stronium titanate, or 'Fabulite' and not diamonds."

Had a single one of the stones sold the victims by appellant been a diamond he would have produced expert testimony to prove this fact.

■ Conflicting evidence always presents a question for the jury as to the guilt of the defendant unless the evidence palpably fails to make out a prima facie case, *Morris v. State,* 47 Ala.App. 132, 251 So.2d 629; *Irons v. State,* 42 Ala.App. 349, 165 So.2d 125; *Bradford v. State,* 35 Ala. App. 407, 47 So.2d 599.

■ Appellant's motion for a new trial was overruled and denied. In reviewing the refusal of a motion for a new trial, this court will indulge every presumption in favor of the correctness of the ruling of the trial court and the decision thereon rests largely within the discretion of the trial judge. *Jones v. State,* 54 Ala.App. 251, 307 So.2d 59, and cases therein cited.

The trial court, over objections of appellant, permitted Mrs. Melton and Mrs. Spradle to be excluded from the rule. Appellant claims error to reverse by this action on the part of the court. We do not agree.

■ It is within the discretion of the trial court to excuse some witnesses and not others from the operation of the rule of exclusion, and this discretion is not reviewable. *Patterson v. State,* 53 Ala.App. 567, 302 So.2d 540; *Rowell v. State,* 53 Ala.App. 286, 299 So.2d 332.

■ It is sufficient to prove so much of an indictment as shows that the defendant has committed a substantial offense specified therein. *Fuller v. State,* 39 Ala.App. 219, 96 So.2d 829; *Parks v. State,* 46 Ala. App. 722, 248 So.2d 761; *Owens v. State,* 291 Ala. 107, 278 So.2d 693.

■ The trial court refused a number of requested charges. They refused charges stating correct principles of law were fairly and substantially covered in the oral charge to the jury. This complies with Title 7, Section 273, Code of Alabama 1940, and a host of case law including *Kennedy v. State,* 291 Ala. 62, 277 So.2d 878.

■ We have carefully examined the record for errors injuriously affecting the substantial rights of appellant and have found none. On the record before us there was substantial evidence pointing toward the guilt of appellant, and the jury so found. There is no warrant for this court to disturb the verdict of the jury.

Accordingly, the judgment of conviction must be, and is, affirmed.

Affirmed.

All the Judges concur.