HARRIS, Presiding Judge.
Appellant was convicted of robbery and sentenced to twelve years in the penitentiary. Throughout the trial in the lower court he was represented by court-appointed counsel and at arraignment pleaded not guilty. After sentence was imposed he gave notice of appeal and was furnished a free transcript. Trial counsel was appointed to represent him on appeal.
Omitting the formal parts the indictment reads:
“The grand jury of said county charge that, before the finding of this indictment, Larry Golston, whose name is otherwise unknown to the grand jury, feloni-ously took one Pontiac Tempest automobile of the value of two thousand and three hundred dollars and one 25 automatic Titan pistol of the value of seventy five dollars, the personal property of Virginia Vann, from her person and against her will, by violence to her person or by putting her in such fear- as unwillingly to part with the same, against the peace and dignity of the State of Alabama.”
Some facts are undisputed and others are in sharp conflict. Around one o’clock of the afternoon of July 11,1975, the victim of the robbery drove a friend, Mrs. Pam Powell, *669 and her young son, to the Fairmont Foundry to pick up a house key from Mrs. Powell’s husband who was an employee of the Foundry. While Mrs. Powell went inside the Foundry to get the key, Mrs. Vann and the Powell boy waited in the automobile. While waiting Mrs. Vann saw four black males enter the front door of the Foundry. Shortly thereafter Mrs. Vann saw one of the black men emerge from the building and disappear. Then suddenly the other three black men surrounded her car. One of these men who was later identified as appellant approached the driver’s side of Mrs. Vann’s car and tried to open the door which was locked. Appellant pointed the gun straight in the face of Mrs. Vann and demanded that she surrender her car to him. She told him he could not have her car. At this time one of the other men pulled a gun on Mrs. Vann and demanded the car. Mrs. Vann told the bandits they could have the car but they could not carry the boy. Appellant protested and Mrs. Vann got out the car and was going to get the boy from the back seat. In the meantime the third black man was entering the back seat to keep Mrs. Vann from getting the boy. A tussle ensued and appellant told the man in the back seat to drop the boy and he threw the boy from the car. Mrs. Vann picked up the boy and ran into the Foundry as the men drove away with her car. Appellant was driving and the bandits abandoned the car in some woods a short distance from the Foundry. A search of the automobile revealed that Mrs. Vann’s pistol had been removed from under the front seat of her car.
Later Mrs. Vann positively identified appellant at a lineup as the robber who first pointed the pistol at her and demanded the car. She also made a positive in-court identification of appellant and testified that she could not be mistaken in her identification of appellant as she got a face to face look at him in close quarters and in broad daylight at the time he pointed the pistol at her.
Mr. Bill Powell testified that he was an employee of the Fairmont Foundry and that appellant and three other black men robbed the Foundry at the time Mrs. Powell was inside attempting to get the key from her husband. Around $3900.00 was taken from the office of the Foundry and the robbers took $52.00 from Mr. Powell’s billfold. Mr. Powell also identified appellant at a lineup as one of the bandits. He, too, made a positive in-court identification of appellant.
Appellant testified in his behalf and denied that he participated in the robbery of Mrs. Vann. He claimed that he was at another place at the time of the robbery. At trial, Lou Ray Driver, a convicted murderer and bank robber, and Charles Tillman, both testified that they participated in the Vann and Foundry robberies but that appellant was not involved.
Appellant claims that he was denied due process and the right to counsel of his own choice when the trial court refused a continuance so that retained counsel could adequately prepare his defense.
From the record:
“MR. POLSON: Yes, sir. It comes to my attention from talking to the defendant and from talking with the defendant’s wife that they don’t wish me to serve as counsel for this case. We have discussed this out in chambers. They are under the impression that they had hired Mr. Dunn to handle the case, and apparently this is not the circumstances from talking with Mr. Dunn. Maybe the defendant would want to say something.
“THE COURT: Let me say something. This case has been on the docket since September, 1975. I know personally of at least two habeas corpus petitions Mr. Dunn has filed on behalf of this defendant, maybe more, in which he has consistently advised the Court, other Courts not this one, but other Courts, that he did not represent this defendant in this case. No one has ever mentioned the fact that you did not represent the defendant in this case at any time other than right now when this case is sent out for trial. Now, Mr. Dunn has just again informed me awhile ago — he informed me just now that he does not represent the defendant. *670 So far as I’m concerned, either you or Mr. Dunn is going to try this case today.
“MR. POLSON: Your Honor, I’m ready to try the case. The defendant, however, does not wish me to serve as his attorney. He wants to hire Mr. Dunn to act on his behalf. Just for the record, I’m ready for trial. I’m here and ready. However, it is the defendant’s wish that Mr. Dunn represent him and that I not represent him.
“THE COURT: Again, I’ll state again for the record that Mr. Dunn has told probably every judge in the courthouse that he does not represent this defendant, that is up until this morning, in which case he wished for a continuance which I denied and I’m going to deny. I don’t think that after nine months that the defendant can come up and occasion a continuance by saying he doesn’t want a particular lawyer to represent him, and I’m not going to so hold in this case.”
The record shows that appellant was represented by at least three different attorneys in various proceedings relating to the robbery charge against him. He retained Mr. Charles Dunn in October of 1975. Mr. David Webster was appointed to represent him at arraignment. Trial counsel was appointed to represent him on November 14, 1975 and this was seven months before trial. It was not until the very day of trial that appellant made any complaint about appointed counsel.
In United States v. Sexton, 473 F.2d 512, Fifth Circuit, Chief Judge John R. Brown, writing for the Court held:
“While it cannot be disputed that the Sixth Amendment to the Constitution grants an accused in a criminal prosecution an absolute unqualified right to have the assistance of counsel for his defense, it does not necessarily follow that his right to a particular counsel is absolute and unqualified.”
The Court went on to say:
“Sexton’s freedom of choice of counsel may not be manipulated to subvert the orderly procedure of the Courts or to interfere with the fair administration of justice.”
Finally, in Bowman v. United States, 409 F.2d 225, (5th Cir.) the Court said: “Judges must be vigilant that requests for appointment of a new attorney on the eve of trial should not become a vehicle for achieving delay.”
We hold the trial judge did not abuse his discretion in refusing to grant a continuance in this case. Under our system of criminal justice a defendant is entitled to a fair trial but not to a perfect trial. Appellant was ably represented and he had a fair trial.
In the Court’s oral charge the jury was instructed that if they believed the State’s evidence beyond a reasonable doubt and to a moral certainty they could find the defendant guilty of either taking Mrs. Vann’s automobile or the pistol from her car. Appellant claims this was error since the indictment charged robbery of the automobile and the gun. We do not agree.
It is sufficient to prove so much of an indictment as shows that the defendant has committed a substantial offense therein specified. Owens v. State, 291 Ala. 107, 278 So.2d 693; Stone v. State, 55 Ala.App. 663, 318 So.2d 359.
Lastly, appellant contends that the trial court erroneously made comments which tended to demean the credibility of defense witness Charles Tillman.
We quote from the record:

“CROSS-EXAMINATION

“BY MR. BLOCKER:
“Q. Did you plead guilty?
“A. No, I didn’t.
“Q. Have you ever seen Larry Golston before?
“A. No, I haven’t.
“Q. Did you see him at the Fairmont Foundry?
“A. No.
“Q. Were you at the Fairmont Foundry?
“A. Was I at the Fairmont Foundry?
“Q. When it was robbed?
“A. No, I wasn’t.
*671 “THE COURT: You were innocent, too.
“MR. POLSON: Your Honor, I want to make a motion.
“THE COURT: I’m just saying — he’s saying he’s innocent. Ladies and gentlemen, I didn’t mean anything by that.
“MR. POLSON: We still object to it, and I move for a mistrial on those grounds.
“THE COURT: Overrule. Let me say this: Ladies and gentlemen, I’m just asking. I want to make it clear he was contending he was not there, and that’s what I wanted to clear up.”
The Court made it clear to the jury that he was only clarifying Tillman’s testimony and that nothing more was intended by his question. In the light of the Court’s explanation we find no reversible error. Smith v. State, 57 Ala.App. 151, 326 So.2d 680, certiorari denied, 295 Ala. 419, 326 So.2d 686; Johnston v. City of Birmingham, Ala.Cr.App., 338 So.2d 7.
A careful examination of the entire record fails to reveal any errors which injuriously affected the substantial rights of appellant. The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.