LEIGH M. CLARK, Retired Circuit Judge.
This is a consolidated appeal from a judgment in each of two cases that were consolidated for trial, in which the jury found defendant guilty of attempted murder as charged in one indictment and robbery in the first degree as charged in the other indictment. The court fixed defendant’s punishment at imprisonment for life in each case, with the sentences to run concurrently. The consolidation of the cases for trial was ordered on motion of the State, with no objection on the part of the defendant. The alleged victim in each case was Tommy Wesley Edwards, Jr. He and the defendant were the only eyewitnesses testifying as to the incidents occurring at the time of the alleged crimes.
According to the undisputed evidence, Edwards, a young man on a hitchhiking expedition on December 11, had spent the previous night at the Salvation Army in Mobile and was headed for his mother’s home in Missouri. He had obtained a ride to the intersection of 1-65 and I — 10, and while standing under the bridge he was picked up by three persons in a pickup truck, one of whom was the defendant. Edwards was riding in the back of the truck in which there was a large dog. The truck had been rented by the defendant, but was not being driven by him at the time. After riding a short distance, the driver told defendant they had to pull off the road but would be getting right back on it. They pulled off the road and went to a dirt pit, where the truck stopped. One of the men got out of the truck on the driver’s side with a pistol and ordered Edwards to get out of the truck and onto the ground, which Edwards did.
While lying on the ground, Edwards was relieved, by force, of his wallet, containing twelve cents, his articles of clothing, a sleeping bag and other items and was shot with a pistol by one of the three other persons in the truck, not this appellant. The three other persons in the truck left without Edwards; Edwards managed to crawl up to the side of the road, where he was seen by passers-by and was taken to a hospital, where a bullet was removed from his spine, and he remained hospitalized ten days.
According to the testimony of appellant, he and a Mr. Hamilton and Mr. LaDieu were riding through Mobile in the truck when they saw Edwards hitchhiking in the cold and rain. Hamilton was driving the truck at the request of appellant because appellant “had been drinking.” They had pulled off the Interstate and had stopped the truck at a dirt pit in order for the appellant to use an improvised rest room. While doing so, he “heard a shot.” He further testified:
“And I looked up and I seen David [Hamilton] standing at the back of the truck and LaDieu was going forward. First thing that flashed in my mind, the man had done shot LaDieu because they had been kind of arguing, you know. Just over knick-knack things ever since we picked him up. I ran around the truck and I ran back there. LaDieu was bending over Mr. Edwards and he was laying on the ground, his arms all spread out and stuff. And David was hollering, get *179 his money, get his money. And I ran over and I grabbed LaDieu and I picked him up and I asked him if he was crazy. Man, what’s he done. And he started hollering, he ain’t got no money; he ain’t got no money.
“Q. Who said that?
“A. LaDieu saying that. He’s the one that got the man’s wallet out. And Hamilton starts hollering, get in the truck; let’s get out of here. Let’s get out of here. And he is waving the gun around and acting like a wild man. I was scared and I panicked. I mean, I don’t know whether if you all ever been in any kind of bad situation but I was scared.
“Q. What did you do next?
“A. I jumped in the truck. LaDieu jumped in behind me on the passenger’s side. David got in behind the driver’s side and he started the truck up forward a little bit and it kind of stuck and started to slide.
“A. Well, we got on the Interstate and he [Hamilton] was driving as fast as that truck would go. I mean he was driving crazy, passing cars off the shoulder and everything else. You know, acting wild.”
A major issue presented on appeal is thus captioned in appellant’s brief: *
“WHETHER THE APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND TO CONFRONT THE WITNESSES AGAINST HIM WHEN THE JURY WAS PROVIDED WITH A DOCUMENT PURPORTING TO BE THE APPELLANT’S MIRANDA RIGHTS WAIVER, BUT WHICH WAS IN FACT A CO-DEFENDANT’S WAIVER OF RIGHTS AND A COPY OF THE CO-DEFENDANT’S STATEMENT INCRIMINATING THE APPELLANT.”
Our review of the court reporter’s transcript and our consideration of the briefs of parties convince us that the reference is to State’s Exhibit 5, which was identified as “Appellant’s Miranda Rights Waiver Form,” but which was a Miranda rights waiver of David Hamilton and a statement of David Hamilton, which incriminates the appellant. However, neither the record proper nor the transcript of the proceedings shows that State’s Exhibit 5 was ever introduced in evidence or ever shown to, read to, or seen by the jury. How this colossal mistake was made, we are unable to say, but we are convinced that fortunately defendant was not prejudiced by what occurred. It is to be noted that testimony for the State showed that a Miranda rights form had been signed by defendant, and a witness for the State testified there were some inculpatory, as well as exculpatory, statements made by defendant, but there is no indication that the witness was reading from State’s Exhibit 5 while testifying. The unfortunate mistake caused no injury to defendant, in our opinion, and no error prejudicial to appellant is properly chargeable to the trial court.
The only other issue presented by appellant is captioned as follows in his brief:
“WHETHER THE TRIAL COURT ERRED IN DENYING THE APPELLANT’S MOTION FOR A MISTRIAL, AFTER THE PROSECUTOR STATED IN HIS OPENING ARGUMENT, ‘HE PANICKED SO MUCH, THIS DEFENDANT, THAT HE WENT TO MISSISSIPPI WITH THOSE OTHER TWO MEN AND TRIED TO ROB A MINUTE [SIC] MARKET.’”
The motion for a mistrial referred to in the caption of the final issue presented by appellant occurred during the opening statement to the jury by counsel for the State, not in the opening argument of the prosecuting attorney, even though the prosecuting attorney was in effect making an argument to the jury, instead of a statement as to what he expected the evidence to show, which regrettably is a frequent occurrence these days during the opening statements of counsel. However, the statement was a rebuttal statement, made after the opening statement of defendant’s counsel, and it apparently was in rebuttal *180 of a statement by defendant’s counsel to the effect that defendant had “panicked,” instead of deliberately fleeing from the scene of the crime after the alleged victim had been shot by Hamilton. In our opinion, the statement of counsel for the prosecution that gave rise to the motion for a mistrial was objectionable and was subject to exclusion from the consideration of the jury, on motion of defendant. However, no such ruling was invoked by defendant’s counsel. According to the undisputed evidence in the case, the three men in the truck went to Lucedale, Mississippi, and were there arrested for the alleged crime in the instant case by law enforcement authorities from Mobile County, Alabama. There was no evidence presented to the jury as to any attempt to rob a market in Mississippi by the defendant or either of the other two men in the truck. The motion for a mistrial was presented out of the presence of the jury, during which time counsel for the State contended there was an attempt to rob a market, which he referred to as a “Minute Market.” He further contended in his argument to the court out of the presence of the jury:
“Judge, as that case says, Mr. Pilgrim [Defendant’s attorney], told the jury that his client did not have the intent to commit any crime. He told the jury that he panicked. He didn’t have anything to do with the crime. This second robbery happened within an hour or an hour and a half of this occurrence. And only then was he apprehended. And if he is going to deny intent which he just did in front of the jury, that case right there says you can show a subsequent act to show the criminal intent of the defendant on the act that he is charged with.”
The State did not pursue in the presence of the jury any effort to show an attempt to rob anyone in Mississippi. The colloquy out of the presence of the jury relative to defendant’s motion for a mistrial is the last reference in the court reporter’s transcript as to any robbery, attempted robbery, or the like in Mississippi. In our opinion, the reference thereto in the rebuttal statement of State’s counsel to the jury should have been avoided, but the trial court was in a better position than an appellate court to determine the necessity or propriety of a mistrial. We repeat and apply what was recently stated by Judge Tyson in Durden v. State, Ala.Cr.App., 394 So.2d 967, 969 (1980), writ quashed, Ala., 394 So.2d 977:
“... It is, of course, axiomatic that the grant or denial of a motion for mistrial is a matter within the sound discretion of the trial court which will only be disturbed upon a showing of manifest abuse; no such abuse is evident here. Shadle v. State, 280 Ala. 379, 194 So.2d 538 (1967); Kennedy v. State, supra, [Ala.Cr.App., 373 So.2d 1274 (1979)]; § 12-16-233, Code of Alabama 1975.” The judgment of the trial court should be
affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.