A jury found Larry Paul Hall guilty on a trial on an indictment that charged that he "did engage in deviate sexual intercourse with Cindy Dutton, by forcible compulsion, in violation of § 13A-6-63 of the Code of Alabama" and on the same trial found him guilty on an indictment charging that he engaged "in sexual intercourse" with the same female, by forcible compulsion, in violation of § 13A-6-61 of the Code of Alabama. Each crime is classified by subsection (b) of each Code section cited as "a Class A felony." The court sentenced said defendant in each case to imprisonment for ten years with the sentence in each case to run concurrently with the sentence in the other case.
There is no dispute between counsel for the respective parties on appeal as to the facts in the case, which are stated at length *Page 1284 
in the brief of counsel for appellant and are adopted by reference in the brief of counsel for appellee. We now endeavor to summarize such facts.
The alleged victim testified that she was staying at a friend's house on Highland Avenue in Montgomery, Alabama, that said friend was in a hospital at the time and "her friend's husband, her friend's child, her friend's brother and her own boyfriend were at the house on the night in question."
According to the alleged victim's further testimony, she left the house at about "1:30 or 2:00 in the morning" but that "it might have been only 12:30 when she left the house." She went from the house to the Majik Market, where she saw the defendant inside of the Majik Market. She testified that as she left the store, the defendant "left behind her," that the defendant "asked her if she wanted a ride and that she replied no, that she didn't live that far," then turned and kept walking. She testified that in the conversation between her and the defendant, it developed that they had seen each other before, particularly that she had waited on him as a cocktail waitress at Club Alabama.
According to further evidence as shown by the testimony of the alleged victim and Mr. Hall, she accepted his offer of a ride in Mr. Hall's automobile. We quote from her testimony in part as follows:
 "Q. Okay. What occurred when you got close to the house where you were going?
 "A. I told him he could stop and let me out here. I said this is where I live; you can stop.
"Q. Did he say anything to you at that time?
 "A. Yes. He said you didn't really think I was going to let you out, did you?
"Q. What did you reply?
 "A. I told him that I did. I said that I thought you would let me out or I wouldn't have gotten in the car in the first place.
"Q. Did he say anything about that?
 "A. He said I'm not going to let you out, and he kept going.
". . .
"Q. So, what did you do when he kept going?
 "A. I just begged him. I said, look, just let me out and nothing else will be said. I just want to go home, and he said I'm not going to let you out. You can either put out or get out.
"Q. What did you say to that?
 "A. I said if you would stop the car, I would get out. And he wouldn't stop. At that time, I reached over to see if I could get the door open even though the car was moving. It was the only thing I could think to do."
The defendant testified in detail that there was deviate sexual intercourse between him and the alleged victim and that he had sexual intercourse with her but that both incidents were consensual.
 I.
The first issue presented in brief of counsel for appellant is thus stated:
 "THE TRIAL COURT ERRED IN NOT ADMITTING EVIDENCE OF THE COMPLAINING WITNESS' SEXUAL ACTIVITY SHORTLY BEFORE THE EVENTS IN QUESTION."
In making this contention, counsel for appellant seeks to show that it is not in contravention of recent legislation in Alabama, Acts 1977, No. 251, p. 328, as now codified in Code § 12-21-203 under the subject of "Admissibility of evidence relating to past sexual behavior of complaining witness in prosecutions for criminal sexual conduct." In the brief of counsel for appellant is the following argument:
 "In this case, Ms. Dutton indicated in a statement to Kathy Pruitt of the Montgomery Police Department (Defendant's Exhibit # 2), which was not admitted into evidence, that she had had sex with her boyfriend shortly before her encounter with Appellant. Such sexual behavior was within the res gestae and, therefore, evidence of such should have been admitted into evidence." *Page 1285 
In commenting upon this contention of counsel for defendant on the trial of the case, the trial judge stated:
 "Now, the Court will state, as I understand res gestae, it would be things that are connected in a time element to the crime itself. Okay. Now I'm saying that what sex she had a couple of hours prior to the rape or prior to getting into the automobile would not be part of the res gestae of the particular criminal element."
It is to be seen from that part of the transcript quoted above as to what was said by the trial judge and defendant's trial counsel that there was disagreement between them as to the time between the claimed sexual intercourse of the complaining witness with her "boyfriend" and the first of the two crimes for which this appellant was being tried. We have no reason to believe that we should not accept the statement of the trial judge as to the time involved, but whether we accept his statement or that of trial counsel, we are convinced that the trial court was correct in ruling that the sexual intercourse between the complaining witness and her "boyfriend" was not within the res gestae of either of the crimes charged against this appellant.
Counsel for appellant endeavors to show an additional reason in support of this issue by argument in his brief as follows:
 "Second, Appellant asserts that there is an exception to the general prohibitions of Section 12-21-203, Code of Alabama when the sexual behavior is material and relevant to a motive for a complaining witness to falsely charge the accused. It is always permissible to cross-examine a witness to ascertain her interest, bias, prejudice, or partiality concerning the matters about which she is testifying. Anything which tends to show bias, unfriendliness, enmity, or inclination of a witness to swear against a party is admissible. Nichols v. State, 276 Ala. 209, 160 So.2d 619 (1964). Great latitude is to be allowed a party in an effort to show bias, unfriendliness, enmity, or inclination of an important witness to swear as to important issues in a criminal case. St. John v. State, 358 So.2d 812
(Ala.Crim.App. 1978).
". . .
 "Appellant contended throughout the trial that he did not use force or threats against Ms. Dutton. His contention was that Ms. Dutton had voluntarily done everything, but needed an excuse for returning late. Evidence pertaining to Ms. Dutton's having had sex with her boyfriend shortly before meeting Mr. Hall would have shown a strong degree of intimacy between Ms. Dutton and her boyfriend which would indicate a motive for Ms. Dutton's allegation that Appellant had used force and threats against her in order to justify to her boyfriend her late return to the house caused by the car getting stuck in the ditch.
 "Thus, Appellant contends that the trial court erred in granting the State of Alabama pretrial Motion in Limine (R. 1920), denying Appellant's trial counsel's request to question Ms. Dutton about her having had sex with her boyfriend after she had stated that her sexual passions were not aroused (R. 66-68), prohibiting answers to Appellant's trial counsel's questions to Ms. Dutton about her reasons for not completing the test at the hospital (R. 97-99, 108)."
We agree with counsel for appellant as to the principles of law relied upon as stated in Nichols v. State and St. John v.State, but we disagree with counsel for appellant as to the application of such principles. Neither of the cited cases ofNichols v. State or St. John v. State furnishes a precedent in favor of appellant. The following is the strongest argument of brief of counsel for appellant on the point:
 "Appellant contended throughout the trial that he did not use force or threats against Ms. Dutton. His contention was that Ms. Dutton had voluntarily done everything, but needed an excuse for returning late. Evidence pertaining to Ms. Dutton's having had sex with her boyfriend shortly before meeting Mr. Hall *Page 1286 
would have shown a strong degree of intimacy between Ms. Dutton and her boyfriend which would indicate a motive for Ms. Dutton's allegation that Appellant had used force and threats against her in order to justify to her boyfriend her late return to the house caused by the car getting stuck in the ditch."
We are convinced that to uphold this contention of appellant would pierce a hole in the statute, which has been repeatedly referred to as "the rape shield" statute or statutes, as other states have similar statutes. We find no good reason to believe that the legislative purpose in the enactment of such statutes in this and other states would be served by such a penetration of the shield that was meant to shield the female victim of forcible sexual perversion or rape against such penetrative efforts made by the appellant, which, if upheld, would likely lead to many other successful penetrative efforts. The statute was enacted for the benefit of victims instead of those charged with the heinous crimes involved.
 II.
The second issue presented for our consideration is thus captioned in brief of counsel for appellant:
 "WHETHER THE TRIAL COURT ERRED IN NOT ADMITTING ALL OF THE PARTICULARS OF THE STATEMENT AND THE ACTUAL STATEMENT GIVEN BY THE COMPLAINING WITNESS TO THE POLICE OFFICER SHORTLY AFTER THE EVENTS IN QUESTION."
In an effort to support appellant's position as to this issue, his counsel cites a number of authorities in Alabama that predate the enactment of the statute now under consideration and for that reason are no longer authoritative. We determine this particular issue adversely to appellant.
 III.
In the brief of counsel for appellant, the issue now under consideration is stated as follows:
 "WHETHER UNDER THE FACTS AND CIRCUMSTANCES OF THIS CASE, THE TRIAL COURT'S EVIDENCE PERTAINING TO THE COMPLAINING WITNESS' SEXUAL ACTIVITY SHORTLY BEFORE THE EVENTS IN QUESTION DEPRIVED APPELLANT OF HIS RIGHT OF CONFRONTATION."
This particular issue was determined adversely to appellant, in an opinion by Judge DeCarlo in Young v. State, 429 So.2d 1162,1163-64 (Ala.Cr.App. 1983), as follows:
 "Appellant also challenges the statute on the grounds that it violates his right to due process and his right to confront the witnesses against him.
 "The Illinois Rape Shield Statute, Ill.Rev.Stat. 1981, Ch. 38, par. 115-7, is very similar to our rape shield statute and was challenged on due process grounds in People v. Cornes, 80 Ill. App.3d 166, 35 Ill.Dec. 818, 399 N.E.2d 1346 (1980). In upholding the statute, the Illinois Appellate Court noted that, prior to the enactment of the statute, a defendant in a rape case could introduce evidence of complainant's general reputation for chastity and immorality (the same was true in Alabama, McElroy's Alabama Evidence, § 32.01) and stated that with the new statute 'the legislature clearly and unequivocally abrogated the old Illinois rule.' The court further observed:
 " '[II] Defendant's right of confrontation necessarily includes the right to cross-examine witnesses, but that right does not extend to matters which are irrelevant and have little or no probative value. Complainant's prior sexual conduct has no bearing on whether she has consented to sexual relations with defendant. The legislature recognized this fact and chose to exclude evidence of complainant's reputation for chastity as well as specific acts of sexual conduct with third persons in case of rape and sexual deviate assault. The exclusion of this evidence does not prevent defendant from challenging or attacking complainant's credibility or veracity *Page 1287 
or otherwise utilizing cross-examination as an effective tool of impeachment. It merely denies defendant the opportunity to harass and humiliate the complainant at trial and divert the attention of the jury to issues not relevant to the controversy. At the same time, it provides an effective law enforcement tool by encouraging victims of rape and other sexual assaults to report these crimes to the proper authorities without fear of having the intimate details of their past sexual activity brought before the public. The legislature was acting well within its power in enacting reasonable legislation intended to eliminate the cruel and abusive treatment of the victim at trial by precluding the admission of prejudicial and irrelevant material and to promote the lawful administration of the criminal justice system. This finding is consistent with the holdings in other jurisdictions in which a defendant has attacked the constitutionality of rape shields laws. [Citations omitted].'
 "We agree with the opinion of the Illinois Appellate Court and therefore hold that § 12-21-203
does not violate appellant's right to due process or his right to confront witnesses against him."
We continue to hold as we did in Young v. State, 429 So.2d 1162
(Ala.Cr.App. 1983).
 IV.
The fourth issue presented in brief of counsel for appellant is directed at the action of the trial court in overruling the objection of defendant's counsel to that part of the closing argument of State's counsel that is to be found in the following excerpt from the court reporter's transcript:
 "The one thing that bothers me the most is that if this was such a casual interlude as Mr. Hall would have you believe, between Ms. Dutton and he, he picks up a woman on Highland Avenue in the city and she willingly gets in the car and there is all of this consent involved in the activity, then why does he end up on Hunter Loop Road? I don't know how many of you know where Hunter Loop Road is, but I'm sure some of you do, and those of you who have been out there can tell the others. I have been out there and I have driven out there and it is all the way out on the Birmingham Highway where there is nothing but a lot of industries out there. And, you take a left on Hunter Loop Road. There is nothing down there but woods and all. It's dark and it's secluded. Now, if there was so much willingness in this case and so much consent in this case, why are we out there on Hunter Loop Road? Why didn't he stop on a street anywhere in town? He didn't do that. Why didn't he go to a hotel or a motel or why didn't he go home? Why did he leave the City of Montgomery. And, I am thankful of one thing in this case. I am thankful that the car got stuck out there because I don't know that Cindy Dutton would be here to testify if it didn't.
 "MR. McPHILLIPS: Objection. That's a little excessive.
"THE COURT: Overruled. Argue what is in evidence.
 "MR. GUY: There was no reason, if all of it occurred, for him to take her out there on Hunter Loop Road. If all of this is true, there is something else that bothers me. If this was so consentive and so willing and he had nothing to hide, why does he tell the two people in the truck that he got lost on his way to Birmingham? Why didn't he say that he was out there parking with his girlfriend? What reason would he have to do that if he didn't have evidence to hide? If he didn't have anything to hide, why would he say that?
 "And, if it wasn't just Ms. Brown that said he was on his way to Birmingham. Mr. Martin, testifying for the defendant in this case said yes, he mentioned something about Birmingham, either going to Birmingham or coming from Birmingham.
 "Mr. McPhillips has talked a lot today about respect and sympathy and everything *Page 1288 
in this case, but you know it's too late for that. Ms. Dutton didn't get any respect back on May the 1st, and that's what we are concerned with. We are not concerned about respect today. Back on May the 1st too and today."
It is to be observed from the excerpt from the court reporter's transcript quoted above and from the brief of counsel for appellant that the center of the target of defendant's objection to the argument of counsel for the State is in the two sentences, "And, I am thankful for one thing in this case. I am thankful that the car got stuck out there because I don't know that Cindy Dutton would be here to testify if it didn't." We are unable to determine with absolute certainty the basis for the quoted statement made by counsel for the State during his closing argument, but there is reason to believe that he was referring to the testimony of the alleged victim to the effect that prior to the time "the car got stuck out there" defendant had threatened to take Ms. Dutton in the automobile to Birmingham by force and against her will. We conclude that perhaps counsel for the State was arguing in effect that if the automobile had not become "stuck out there" the defendant would have succeeded in abducting her from her residential area to another area for an indefinite period of time where she would have been without friends or acquaintances, tremendously miserable and either unwilling or unable to return to Montgomery for the trial of this case. We are unable to conclude that the trial court committed error prejudicial to defendant in overruling the objection of defendant's counsel to the particular argument of counsel for the State. We determine this particular issue adversely to appellant.
 V.
The following is the fifth issue presented in brief of counsel for appellant:
 "THE TRIAL COURT ERRED IN NOT TAKING APPROPRIATE ACTION IN RESPONSE TO THE COMPLAINING WITNESS' CRYING."
Three instances occurring on the trial of the case furnished the basis of this particular contention of appellant. The first was during the testimony of Ms. Dutton on direct examination by counsel for the State. We quote therefrom as follows:
 "Q. Had he said anything else to you that threatened you in any way?
 "A. Yes. He told me there was a bridge right up the road from where we were and if I didn't do what he said, he would throw me off that bridge.
"Q. At this point, were you afraid for you safety?
 "A. Yes, I was very afraid. So much to the point that I couldn't — I couldn't do anything.
"Q. Take your time and answer when you can.
 "THE COURT: All right. Ladies and Gentlemen, I'm going to ask you to step into the jury room for a few minutes. It's the room right behind you. While in there, don't discuss — I mean don't discuss the case among yourselves and don't talk about it at all. All right.
 "(Whereupon, the following proceedings occurred outside of the presence and hearing of the jury:)
 "THE COURT: Okay. Ms. Dutton, I'm going to ask you to try to maintain your composure as much as you can.
"THE WITNESS: Okay.
 "MR. McPHILLIPS: Thank you, Your Honor. For the record, Your Honor, I want to respectfully move the Court for a mistrial on the grounds that I did earlier request that the instruction be given on voir dire questions about whether anybody would be affected by a witness, especially the Prosecutrix crying from the stand, and I had good grounds to do it. We went through a preliminary hearing in May and a trial in October where she did cry and therefore I knew she would cry and she has now. And, I'm afraid it would prejudice the jury.
"THE COURT: Motion is denied. *Page 1289 
 "(Whereupon, a brief recess was had, after which, the following proceedings occurred within the presence and hearing of the jury:)
 "THE COURT: Do you request I do that, Mr. McPhillips?
 "(Whereupon, Mr. McPhillips nodded his head in an affirmative manner.)
 "THE COURT: Mr. McPhillips has requested that I instruct the jury about the witness crying.
 "All right. Ladies and Gentlemen, some times during the trial, particular trials, perhaps emotions are shown. Crying or whatever else. It's human nature. I will simply instruct you at this time that you are not to be persuaded by crying or emotions from either side. I will give you a charge dealing specifically with the issue at the proper time. Okay.
"Continue.
 "Q. By Ms. Emfinger: Cindy, you previously said that your hair was long at that time. About how long was it at that time? Shoulder length or longer?
 "A. About right here. Not quite to my shoulder, but a little longer. (Indicating.)"
The next instance of any complaint by counsel for defendant of any crying or the like upon the part of Ms. Dutton was at a hearing in the absence of the jury, a recess having been declared, in which the following occurred:
 "MR. McPHILLIPS: Wait a minute. I want to go on record.
"THE COURT: Okay.
 "MR. McPHILLIPS: I want to go on Record saying with all respect to Ms. Dutton that I am concerned with her continual crying. I think it's prejudicing the case of my client and I would ask Your Honor to request that Ms. Dutton withdraw herself from counsel table because of her crying that is prejudicing the Defendant.
 "THE COURT: The Court has already instructed the jury not to be influenced by crying by Ms. Dutton or anything else in this case. The Court feels that the behavior of Ms. Dutton up to this point is not such that it would have had any adverse effect on your client or prejudice the case for the State or for the Defendant. And, if it ever comes to the point that the Court feels that Ms. Dutton's emotions — the Court feels that Ms. Dutton's emotions are exhibited in such a manner that it would have a prejudicial effect on the case, I will take care of it at that time.
"MR. McPHILLIPS: Okay."
The third and final instance of any crying by Ms. Dutton as shown by the court reporter's transcript was as follows:
 "(Whereupon, a brief recess was taken, after which, the jury returned to the jury room to resume their deliberations. Subsequent thereto, the following occurred within the presence and hearing of the jury:)
"THE COURT: Has the jury reached a verdict?
 "THE FOREPERSON: No, sir. The jury, I believe, is hopelessly deadlocked.
 "(Whereupon the Prosecutrix, Cindy Dutton, started sniffing and crying.)
 "THE COURT: All right. Based on the Court Record, the jury went out at 11:40 and it is now 3:43. You have had a forty-five minute lunch recess. By no means would anyone ask you to compromise your individual consciences or your decision just to agree with the verdict, but let me give you another charge and I will ask that you listen to the charge very closely."
During the next several pages of the transcript it is shown that the jurors were sent back to the jury room for further deliberations and upon being unable to reach a verdict that day they resumed deliberations the next morning and at approximately 10:30 A.M. returned the verdicts finding the defendant guilty as charged in both of the indictments.
It is to be observed from the foregoing quotations from the transcript, that the trial judge was alert to the first instance of *Page 1290 
the behavior of Ms. Dutton complained of by counsel for defendant-appellant by noting the first instance of her lack of composure prior to its having been noted otherwise in the transcript and received thanks therefor from defendant's attorney just prior to said attorney's motion for a mistrial, which the trial court denied but complied with the request of the attorney for defendant by appropriately instructing the jurors that they were "not to be persuaded by crying or emotions from either side." By the next complaint of defendant's attorney as to the conduct of Ms. Dutton, said attorney asked the trial judge "to request that Ms. Dutton withdraw herself from counsel table because of her crying that is prejudicing the Defendant." This request bordered on a request that she not be allowed to remain in the courtroom, that she not be excused from the rule that witnesses not be in the courtroom while other witnesses were testifying. The only other instance found in the transcript of the crying of defendant was not followed by any express observance thereof other than that which is shown in the court reporter's transcript.
The last two sentences of brief of counsel of appellant as to the issue now under consideration are as follows:
 "Appellant maintains that the trial court should have granted the motion for mistrial, granted the request for Ms. Dutton to withdraw from counsel table, and upon consideration of all the aforementioned episodes granted a new trial. The trial court's failure to do so resulted in a denial of a fair trial and due process of law."
It is to be seen from said quoted sentences of appellant's brief that the two rulings of the trial court during the trial of the case furnishing the basis for the particular issue now under consideration are the overruling or denial of defendant's motion for a mistrial and the denial of the request by defendant's attorney that "Ms. Dutton not be allowed to sit at the counsel table of the prosecuting attorney," or, stated otherwise, not be excused from the rule that the witnesses remain out of the courtroom while other witnesses were testifying. As to both of such rulings, it is the settled law in Alabama that they come within the sound discretion of the trial court, as shown by the authorities cited in the next two paragraphs of this opinion.
Since 1907, the statutory law of Alabama has been substantially as now codified in Code 1975, § 12-16-233, as follows:
 "The court or presiding judge in all cases of jury trial may discharge the jury without giving a verdict, with the consent of all parties to the trial or without the consent of the parties, when, in the opinion of the court or judge, there is a manifest necessity for a discharge or when the ends of justice would otherwise be defeated. In all cases in which the jury is discharged without a verdict, a mistrial shall be entered upon the minutes of the court, assigning the reason or cause for the mistrial, and no person shall gain any advantage by reason of such discharge of the jury.
 "Code 1907, § 7314; Code 1923 § 8696; Code 1940, T. 30, § 100."
As we said in Wallace v. State, 455 So.2d 177, 180
(Ala.Cr.App. 1984).
 "We repeat and apply what was recently stated by Judge Tyson in Durden v. State, Ala. Cr. App., 394 So.2d 967, 969 (1980), writ quashed, Ala., 394 So.2d 977: " '. . . It is, of course, axiomatic that the grant or denial of a motion for mistrial is a matter within the sound discretion of the trial court which will only be disturbed upon a showing of manifest abuse; no such abuse is evident here. Shadle v. State, 280 Ala. 379, 194 So.2d 538
(1967); Kennedy v. State, supra, [Ala. Cr. App., 373 So.2d 1274 (1979)]; § 12-16-233, Code of Alabama 1975.' "
The only case cited by appellant in support of his contention that the trial court herein should have granted defendant's motion for a mistrial is that of Hammond v. State, 26 Ala. App. 391,160 So. 900 (1935), in which the facts stated in the opinion are tremendously stronger in favor of appellant on this issue than the facts in the instant case, in which we are of the opinion *Page 1291 
that the trial court was correct in overruling defendant's motion for a mistrial.
We are of the opinion also that compliance by the trial judge with the motion or request of defendant's counsel that Ms. Dutton be required "to withdraw from counsel table" was properly denied. If, by the request or motion, it was meant that she should be left in the courtroom but not at the table being utilized by counsel for the State, action by the trial judge in accordance with such motion or request would have been conducive to unjust procedure in that counsel for the State would have been deprived of her proximity in consulting with her as to her recollection of the facts of the case to which counsel for the State would have been entitled in performance of his duty in prosecuting the case. As to this, we think the duty of the trial judge is similar to his duty as to a motion or request to allow a witness to remain in the courtroom during the actual trial of the case notwithstanding the rule for exclusion of witnesses during the trial had been invoked, as to which the law is as stated by Judge Barron in Young v. State, in 416 So.2d 1109, 1111 (Ala.Cr.App. 1982) as follows:
 "Where the rule for the exclusion of witnesses from the courtroom is invoked, it is within the sound discretion of the trial court to allow any one of the witnesses to remain in the courtroom during the examination of the others and the exercise of this discretion is not reviewable on appeal. Huskey v. State, 129 Ala. 94, 29 So. 838
(1901); Barnes v. State, 88 Ala. 204, 7 So. 3
(1890); Stone v. State, 55 Ala. App. 663, 318 So.2d 359 (1975)."
We hold that the trial court was not in error in overruling or denying the motion or request of defendant's counsel that Ms. Dutton withdraw from the table of counsel for the State.
 VI.
The final contention in brief of counsel for appellant is now quoted in full:
 "THE TRIAL COURT ERRED IN STATING THAT PAYMENT TO WITNESSES HAD TO COME THROUGH THE CLERK'S OFFICE.
 "At the conclusion of the reading of Mr. Martin's testimony, the trial court stated that there had been an allegation made that Mr. Martin had been paid for his testimony by an employee of Appellant's trial counsel. The trial court further stated that Mr. Martin had filed an affidavit stating that he had only been paid for his expenses for coming to court. In addition, the trial court stated that when a witness is subpoenaed to come to court any pay involving the witness coming to court was to be paid through the Clerk's office. Appellant asserts that the trial court's statement that such payments had to go through the Clerk's office was incorrect and deprived Appellant of his due process rights."
The contention is directed at that which occurred on the trial of the cases now under consideration promptly after the testimony of Mr. Robert Martin, a witness for the State on the previous trial of the cases, was read to the jury. We now quote from the court reporter's transcript that which occurred immediately after the reading and the State's introduction into the evidence of said previous testimony of Mr. Martin:
 "THE COURT: Now ladies and gentlemen of the jury, Mr. Martin, and you remember the evidence, of course, and I'm not going to comment on the evidence or the testimony, but he was the gentleman that was allegedly driving the wrecker. That's his testimony and you are to accept it as if he were in court to testify here today. Now, after Mr. Martin testified, there was an allegation made that Mr. Martin was paid for his testimony by a gentleman named Mr. Puckett. That is his name, Mr. Puckett. Is that his name?
"MR. McPHILLIPS: Yes.
 "THE COURT: And he worked for Mr. McPhillips. Mr. Martin was subpoenaed to come to court and he answered the subpoena and answered Mr. McPhillips' questions and Mr. Guy's questions. After testifying in court, there was an allegation that Mr. Puckett went out in the hallway and paid Mr. Martin some money, and the allegation was that he was *Page 1292 
paying him for the testimony in this case. Okay. To that allegation, Mr. Martin has filed an affidavit saying that he was only paid by Mr. Puckett for expenses for coming to Court, gasoline, et cetera. If I recall, Mr. Puckett said he paid him for expenses. I will go further and tell you that when a witness is subpoenaed to come to Court, that any pay involving any witness coming to Court is paid through the Clerk's Office of the Court. Okay I gave you that for your information in this case.
"MR. McPHILLIPS: May I approach the Bench?
 "THE COURT: That's all I'm going to instruct the jury on.
"MR. McPHILLIPS: Can I go on the Record then?
 "THE COURT: That's all I'm going to instruct them on.
"MR. McPHILLIPS: Can I —
"THE COURT: Call the next witness, Mr. McPhillips.
 "MR. McPHILLIPS: Later, I would like to make a showing, Your Honor.
 "THE COURT: All right. Call your next witness, Mr. McPhillips."
As to the issue now under consideration, the entire discussion thereof in brief of counsel for appellee is as follows:
 "THE TRIAL COURT PROPERLY STATED THAT PAYMENT TO WITNESSES IS PAID THROUGH THE CLERK'S OFFICE OF THE COURT.
 "Appellant alleges the trial court's statement that payment to witnesses is paid through the Clerk's Office of the Court was incorrect and deprived Appellant of his due process rights. Appellant does not allege how his due process rights were violated nor is there any evidence that Appellant was prejudiced in any manner. Furthermore, at the time of the trial, payment to witnesses did come through the Clerk's Office and therefore the trial court's statement was correct. "Even if it were incorrect, no showing of prejudice has been made which would warrant a reversal. Therefore, the lower court should be affirmed and the judgment of Appellant upheld."
Neither party on appeal cites any authority in support of his position. Furthermore, we are not enlightened by the transcript or by the brief of either counsel on appeal as to whether the trial judge was correct in making the statement, "I will go further and tell you that when a witness is subpoenaed to come to Court, that any pay involving any witness coming to Court is paid through the Clerk's Office of the Court." We note also that the trial judge did not state that "PAYMENT TO WITNESSESHAD TO COME THROUGH THE CLERK'S OFFICE" as stated in the caption of this issue in brief of counsel for appellant. We are not convinced that the trial court committed error prejudicial to defendant as to this issue.
The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.